## HICKMAN v. TAYLOR et al.
### No. 9035.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 1, 1945.

Reargued Nov. 10, 1945.

Decided Dec. 10, 1945.

Writ of Certiorari Denied April 22, 1946.
See 66 S.Ct. 961.

Samuel B. Fortenbaugh, Jr., of Philadelphia, Pa. (Shields, Clark, Brown and McCown, of Philadelphia, Pa., on the brief), for appellants.

Thomas E. Byrne, Jr., of Philadelphia, Pa. (Krusen, Evans & Shaw, of Philadelphia, Pa., on the brief), for Krusen, Evans & Shaw, amicus curiae.

Harrison G. Kildare, of Philadelphia, Pa. (Rawle & Henderson, and Joseph W. Henderson, all of Philadelphia, Pa., on the brief), for Joseph W. Henderson, amicus curiae.

Abraham E. Freedman, of Philadelphia, Pa. (Freedman, Landy & Lorry, of Philadelphia, Pa., on the brief), for appellee Hickman.

Howard Burtt, of Philadelphia, Pa., for appellee Baltimore & O. R. Co.

Before BIGGS, ALBERT LEE STEPHENS, MARIS, GOODRICH, McLAUGHLIN, and O'CONNELL, Circuit Judges.

GOODRICH, Circuit Judge.

■ This is an appeal from a judgment of the District Court for the Eastern District of Pennsylvania, which adjudged the appellants guilty of criminal contempt and imposed sentence therefor. The appellants are two clients and their lawyer. The basis of the contempt order was their refusal to answer a certain interrogatory propounded by the plaintiff's counsel in a personal injury suit. They took the position that what was asked for was beyond the proper scope of the discovery process under the Federal Rules. The court ruled against them and upon their disobedience of the order adjudged them guilty of contempt. We, therefore, have the basis for appeal.[1]

The case tests the limits, if any, of the scope of the discovery procedure under the Federal Rules. A reversal of the judgment for contempt would of necessity compel us to decide that the District Court had gone too far. In considering the question we have the help of the host of District Court decisions upon the relevant paragraphs of the Rules. Some of them will be noted below. It is sufficient here to refer to the complete collection in Federal Rules Service, Chapters 26, 33 and 34. There is little appellate authority for the obvious reason that these orders are nearly always interlocutory, R. D. Goldberg Theater Corp. v. Tri-States Theater Corp., D.C.D.Neb.1944, 8 Federal Rules Service, 34.64, Case 1, and cases there cited; the question seldom comes before a Circuit Court of Appeals.[2] The instant case

---

[1] Rule 37(b) (1), 28 U.S.C.A. following section 723c, provides: "Contempt. If a party or other witness refuses to be sworn or refuses to answer any question after being directed to do so by the court in the district in which the deposition is being taken, the refusal may be considered a contempt of that court." Rule 37(b) (2) provides: "Other Consequences. If any party or an officer or managing agent of a party refuses to obey an order made under subdivision (a) of this rule requiring him to answer designated questions, or an order made under Rule 34 to produce any document or other thing for inspection, copying, or photographing or to permit it to be done * * * the court may make such orders in regard to the refusal as are just, and among others the following: * * * (iv) In lieu of any of the foregoing orders or in addition thereto, an order directing the arrest of any party or agent of a party for disobeying any of such orders * * *." Appellate review of the final judgment of contempt involves power to review the civil element as well as the criminal and to grant relief affecting both. In Apex Hosiery Co. v. Leader et al., 3 Cir., 1939, 102 F.2d 702, this Court decided that an order was interlocutory hence not appealable but specifically stated that contempt orders were subject to review and cited Union Tool Co. v. Wilson, 1922, 259 U.S. 107, 42 S.Ct. 427, 66 L.Ed. 848, as general authority for the procedure involved here. Mr. Justice Brandeis at page 111 of the latter opinion in 259 U.S., at page 428 of 42 S.Ct., said, "The contemnor may obtain immediately a review by writ of error. * * * the Court of Appeals [could] * * * review that part which was civil as well as that which was criminal in its nature. [And grant] * * relief which affected both * * *."

[2] The few appellate cases we have are remote from the central issue here and arose under the following circumstances: In Terminal Railroad Ass'n of St. Louis v. Moore, 8 Cir., 1944, 145 F.2d 128, while a personal injury action was pending in the Eastern District Court of Missouri a petition for writ of prohibition was filed in the Eighth Circuit Court of Appeals challenging an order of the District Court under Rule 34, giving plaintiff the right to inspect statements he had made to defendant concerning plaintiff's accident or injuries. Writ denied.

Hoffman v. Palmer, 2 Cir., 1942, 129 F.2d 976, affirmed, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719, appeal by defendant from judgment for damages entered after jury trial. Error alleged on exclusion from evidence, of a statement signed by engineer driving the locomotive when the accident occurred. Reversed.

United States v. Smith, 9 Cir., 1941, 117 F.2d 911, is even more remote in its collateral applicability. The case arose up-

had thorough consideration in the District Court. It was heard en banc by all the Judges of the District Court for the Eastern District of Pennsylvania and the thoroughly considered opinion by the Senior Judge was concurred in by all of his colleagues. 1945, 4 F.R.D. 479, 481. The opinion in that Court premises that "The guiding principle is the broad conception of the Rules that discovery of all matters relevant to a suit should be allowed to the fullest extent consistent with the orderly and efficient functioning of the judicial process." Starting from that premise the District Court concluded that the information sought to be elicited was relevant to the suit and that counsel for the defendants could be compelled to disclose it to the opposing party.

Such facts as are needed for an understanding of the controversy may be very briefly stated. A tug owned by Taylor and Anderson had capsized and five seamen met their deaths in the accident. Action was brought by the administrator of one of them under the Jones Act, 46 U.S.C.A. § 688. Through her counsel she filed thirty-nine interrogatories. The appellants answered all but one. This one is Number 38 which reads as follows:

"(38) State whether any statements of the members of the crews of the Tugs 'J. M. Taylor' and 'Philadelphia' or of any other vessel were taken in connection with the towing of the car float and the sinking of the Tug 'John M. Taylor'. Attach hereto exact copies of all such statements if in writing, and if oral, set forth in detail the exact provisions of any such oral statements or reports."

There were some supplemental interrogatories including a request for the production of memoranda.[3] Mr. Fortenbaugh, the lawyer concerned, filed a written statement and later testified by deposition telling how and why the statements were obtained.

---

on suit on a war risk insurance policy and the court ordered production of a document to refresh the memory of adversary's witness.

National Bondholders Corporation et al. v. McClintic, 4 Cir., 1938, 99 F.2d 595, arose on mandamus proceedings against a district judge to vacate an order staying the taking of depositions of certain witness. Denied.

[3] They read as follows:

"(1a) State whether you or your representatives have any knowledge or information as to whether any survey, examination or inspection was made of the Tug 'J. M. Taylor' after it was raised from the Delaware River.

"2(a) State whether you or your representatives have any knowledge or information as to whether any oral or written statements, records, reports or other memoranda were made concerning any matter connected with or arising out of the towing operation, sinking, salvaging, and repair of the said tug and car float, the death of the deceased and any other matter related to the accident and incidents involved herein.

"2(3a) If your answer to (1a) or (2a) be in the affirmative, state:

"(a) the names and addresses of all persons or companies who were engaged or involved in the making of all such surveys, examinations and inspections;

"(b) whether any records, reports, statements or other memoranda were made or rendered in connection with said examinations within your knowledge or information;

"(c) If your answer to subdivision (b) be in the affirmative, set forth:

"(1) the nature of each and every such record, report, statement or other memoranda;

"(2) the names, addresses, capacity and relationship of every person or company making or rendering each and every such report, statement, record or other memoranda;

"(3) State the name, address, capacity and relationship of every person or company having possession or custody of each and every one of said records, reports, statements or other memoranda.

"(4) State the purpose for which each and every such record, report, statement or memoranda was made, the date it was made and the name, address, capacity and relationship of the persons or companies to whom made.

"(5) State whether any records, reports, statements or other memoranda are ordinarily or have in the past been required in connection with an accident or disaster. If your answer be in the affirmative, then state what person or persons were ordinarily or have in the past been required to make or render any such records, statements, reports or other memoranda, to whom such records, reports, etc. were required to be made, and describe the nature of such documents.

"(6) State whether the statements, records, reports or other memoranda rendered in this case were obtained in the same manner as in the past or if not, state in what way the practice was different."

So much for background of fact. Was the District Court correct in its law?

The parties are not entirely clear which of the Federal Rules is involved. The appellant says it is 34 or perhaps 33 and 34. The appellee in oral argument stated that he was proceeding under Rule 33. The District Court considered the plaintiff to be proceeding under Rule 33, although it said that the plaintiff could have elected to take depositions or, in case of written statements, have filed a motion to produce under Rule 34. Then the District Court stated that "What is said in this opinion applies to all three forms of discovery."

We take up this point first before getting to the main question. We think that 33 is the Rule involved and, for reasons which appear later, Rule 26 also. Plaintiff is not seeking to see an original document and copy or photograph it as provided in Rule 34. He is proceeding by interrogatory and, in connection with an interrogatory, wants the defendant to give him a copy of a memorandum. This is, in our opinion, concerned with Rule 33 rather than 34. But since the District Court, as above quoted, proceeded upon the theory that what is said applied to all the discovery Rules we are required to point out a difference in language in these Rules which we think must be given attention. Rule 34 requires good cause to be shown.[4] The opinion of the District Court states that it amends its statement in Stark v. American Dredging Company, 3 F.R.D. 300, and that the rule be restated "Unless, under the circumstances of any particular case, the Court is satisfied that the administration of justice will be in some way impeded, discovery will be granted when asked." We think this is the proper approach to the exercise of discretion under Rule 33. We do not think that it is correct under the language used in Rule 34. The requirement in Rule 34 for showing of good cause cannot be disregarded. Insofar as the remarks of the learned District Court apply to Rule 34, they went too far. Insofar as they apply to Rule 26 and Rule 33 they are approved. This point does not change the result in the instant case or relieve us from facing the problem it presents. We pass on it because the District Court passed on it by applying its opinion to all the Rules which provide for discovery. We go on then to the difficult question involved in the appeal.

The important matters called for in the interrogatory are statements which the lawyer, acting in an investigating capacity, has taken from persons who have, or purport to have, knowledge about the facts which gave rise to the lawsuit. Two things are asked for. One is a copy of the statements which are in writing, whether signed or not, or merely memoranda; the other is that the lawyer reduce oral statements to writing and give his opponent a copy thereof.

As we approach the question we must discard some favorite craft notions of the advocate. We must discard, for instance, the concept that there is something close to a property right in the information which the lawyer digs up about the client's case and has in his possession.[5] We must also dis-

---

[4] As to what precisely is meant by good cause the cases do not indicate with any degree of certainty: Marzo v. Moore-McCormack Lines, Inc., D.C.E.D.N.Y.1945, 8 Federal Rules Service 34.13, Case 1, Inch, D.J., "No attempt is made to show 'good cause' which means some plainly adequate reason for the desired production and inspection. Plaintiff's mere statement that he is entitled to the relief sought is insufficient"; Heiner v. North American Coal Corp., D.C.W.D.Pa.1942, 3 F.R.D. 63, Gibson, D.J., "To entitle complainant to the order prayed he must show good cause for the order, must designate the documents desired, and must show that they are not privileged and are material to any matter involved in the action"; Leach v. Greif Bros. Cooperage Corp., D.C.S.D.Miss.1942, 2 F.R.D. 444, 446; Mize, D. J., "It is difficult to lay down a definition of good causes that would ap-

ply to every particular case. There is a wide latitude." (Affidavit that defendant was preparing to take testimony of the same persons who had given the statements, showed good cause for inspecting the statements); Piorkowski v. Socony Vacuum Oil Co., D.C.M.D.Pa.1940, 1 F.R.D. 407, 408, Watson, D. J., A party does not show good cause if he "has failed to show that the documents desired will in any way aid him in the preparation of his case, or that there is reasonable cause for believing that the contents of the documents concern this case."

[5] "Some lawyers also grumble, saying that it is 'unfair' that a lawyer who has diligently prepared his case should be obliged to let counsel for the adversary scrutinize his data." Hoffman v. Palmer, 2 Cir., 1942, 129 F.2d 976, 997, affirmed 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719.

card the notion that questions from the other side can be fended off on the ground that the opponent's lawyer is simply engaged in a fishing expedition.[6] These notions are hard to get rid of, but we take it that they are contrary to the idea of this discovery portion of the Federal Rules. The premise taken by the District Court, quoted above, is not dissimilar to that of Justice Holtzoff.[7] In speaking of discovery he says there are two guiding principles (page 70): "First, every party to a litigation is entitled to secure all evidence, information and documents germane to the issues, even if they are in possession of an adverse party. Second, such evidence, information and documents should be made available before the trial. The purpose is not only to facilitate the obtaining of evidence for use at the trial, but also to reduce the element of surprise to a minimum and shorten trials."

How much of a jolt this theory is to the practicing lawyer depends, in part, upon

how far the practice with which he was familiar before the Federal Rules calls for something of the kind. The Rules probably go further than any State practice, but they are a much greater distance from the practice in some States than in others. See (1931) Note, 44 Harv.L.Rev. 633, "The Bill of Discovery Under Reformed Procedure."

We must start any discussion of the use of discovery in a particular case from the premise that the Rules are intended to go far in making information known by one party available to the other. Perhaps it is helpful if we start from a case which all would agree to be within the Rules and see how much further we are called to go here. Suppose the plaintiff needs the information contained in an operating report of a particular department of a defendant employer for a particular day. Such document, we take it, could be called for as a matter of course under the Rules.[8] Does the demand in this case real-

[6] One finds here a sharp contrast between the statements of those who were engaged in writing the Rules and some of the District Judges who have the responsibility of applying the Rules when promulgated. Some, but not an overwhelming preponderance, of the judges have difficulty in believing that the Rules Committee really meant what it said. The following excerpts and citations show the clash of points of view:

"Hostility to 'fishing expeditions' before trial is a traditional and powerful taboo. To overcome its subtle influence requires more than logic and learning. Experience alone can effectively meet it." E. R. Sunderland, Foreword to Ragland, Discovery Before Trial, p. iii (1932).

"Adherence to the older method is due largely to the familiar fear of 'fishing expeditions'. It is true that fishing is likely to occur in oral examination, but when it is realized how little validity there is to the 'fishing' objection, and how much more definite the information obtained by oral examination is, there is no reason why this searching and flexible method should not normally be available for both depositions and discovery." "An appropriate pendant to it was the shibboleth—repeated to the point of nausea—that the court would not sanction 'fishing expeditions' ". J. A. Pike and J. W. Willis, The New Federal Deposition-Discovery Procedure (1938) 38 Col.L.Rev. 1179 and 1436, containing a full discussion.

"Contrary to earlier limitations, the party may now engage in a 'fishing expedition'." J. A. Pike, The New Federal

Deposition Discovery Procedure And The Rules of Evidence (1939) 34 Ill.L.Rev. 1.

"That the proceeding may constitute a 'fishing expedition' is not a valid objection to interrogatories." A. Holtzoff, Instruments of Discovery Under Federal Rules of Civil Procedure (1942), 41 Mich. L.Rev. 205.

In the same vein are Olson Transportation Co. v. Socony-Vacuum Oil Co., D.C. E.D.Wis.1944, 8 Federal Rules Service 34.41, Case 2, and cases there cited; and Golden v. Arcadia Mutual Casualty Co., D.C.N.D.Ill.1942, 3 F.R.D. 26. Contra: For early statements antedating the new federal rules on this hoary question see Note 62 in Pike and Willis, The New Federal Deposition-Discovery Procedure (1938) 38 Col.L.Rev. 1179 and 1436. For federal decisions to the same effect, which arose later, see note 63 of the same article. More recent federal cases, contra, are: Walling v. R. L. McGinley Co., D.C. E.D.Tenn.1943, 4 F.R.D. 149; United Mercantile Agencies v. Silver Fleet Motor Express Inc., D.C.W.D.Ky.1941, 1 F. R.D. 709; Fort Wayne Corrugated Paper Co. v. Anchor Hocking Glass Corp., D.C.W.D.Pa.1940, 4 F.R.D. 328; Welty v. Clute, D.C.W.D.N.Y.1939, 29 F.Supp. 2. A case that attempts to steer a middle course between the opposing shores of opinion is Pierce v. Submarine Signal Co., D.C.D.Mass.1939, 25 F.Supp. 862.

[7] New Federal Procedure in the Courts, 1940, published by the American Bar Association.

[8] The extent to which records in the files of a business organization have been

218

ly go essentially further?[9] It is true that the defendants, through their lawyer, were diligent in going out and getting these statements before the plaintiff did. We have already indicated that this fact does not prevent the other side from sharing the fruits of that diligence. The Rules sometimes speak of evidence. But whether the documents turn out to be competent as evidence themselves is not the test in dis-

thrown open to an adversary's inspection is indicated by the following cases: Cohen v. Beneficial Industrial Loan Corp., D.C.D.N.J.1945, 8 Federal Rules Service 34.41, Case 8, Smith, D. J. (Inspection of books and records granted in stockholder's suit); Roth v. Paramount Film Distributing Corp., D.C.W.D.Pa.1945, 4 F.R.D. 302, McVicar, D. J. (Inspection of records of box-office receipts granted in anti-trust action); Walling v. Belikoff, D.C.S.D.N.Y.1943, 3 F.R.D. 92, Hulbert, D. J. (Inspection of records by Administrator permitted in action to enjoin violation of Fair Labor Standards Act); Walling v. R. L. McGinley Co., D.C.E.D.Tenn. 1943, 4 F.R.D. 149, Taylor, D. J. (Discovery of documents relating to wages, hours and duties of employees, records, schedules etc. granted in action under Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.). And discovery has also been permitted against the same governmental agency which utilized it in the latter two cases. See Walling v. Richmond Screw Anchor Co., Inc., D.C.E.D.N.Y. 1943, 4 F.R.D. 265, Moscowitz, D. J. (Names of allegedly underpaid employees in records of governmental agency not so privileged as to preclude discovery). Shultz v. Manufacturers & Traders Trust Co., D.C.W.D.N.Y.1940, 1 F.R.D. 243, Burke, D. J. (Inspection of corporate books of defendant granted in fraud action); Fishman v. Marcouse, D.C.E.D. Pa.1940, 32 F.Supp. 460, Bard, D. J. (Inspection of employee records of defendant company granted in Fair Labor Standards Action); Leimer v. State Mutual Life Assurance Co., D.C.W.D.Mo. 1940, 1 F.R.D. 386, Reeves, D. J. (Insurer ordered to produce copies of policies sued upon for inspection). An even wider latitude was granted in Gielow v. Warner Bros. Pictures, Inc., D.C.S.D.N. Y.1938, 26 F.Supp. 425, Conger, D. J. (Complainant's original manuscripts of stories and musical compositions opened to discovery by defendant in equity action).

At least one court has pointed out, however, that the inspection of corporate records is not all inclusive regardless of the nature of the suit: June v. George C. Peterson Co., D.C.N.D.Ill.1942, 7 Federal Rules Service 34.41, Case 1, Holly, D.J., "I do not think Rule 34 requires the court in every case to order a corporate defendant to produce for the inspection of plaintiff, a stranger, all the rec-

ords of its business affairs merely because plaintiff has filed a suit against it."

Where the documents do have some bearing, on the other hand, the courts have gone far in allowing inspection: Prosperity Co. Inc., v. St. Joe Machines, Inc., D.C.W.D.Mich.1942, 2 F.R.D. 299, Raymond, D.J. (Documents relating to date of conception or reduction to prior practice in patent case open to inspection); Connecticut Importing Co. v. Continental Distilling Corp., D.C.D.Conn. 1940, 1 F.R.D. 190, Hincks, D. J. (Copies of income tax returns not privileged against discovery); Fidelity & Casualty Co., Inc., v. Tar Asphalt Trucking Co., Inc., D.C.D.N.J.1939, 30 F.Supp. 216, 217, Fake, D.J. (Social Security records, Unemployment Compensation records and Income Tax records opened to discovery by plaintiff where defendant's books did not "furnish sufficient information as to whether or not the full amount of premiums [had] been paid * * *.") The examination of records has extended even to production of contracts with third parties: Moore v. C. A. Olsen Manufacturing Co., D.C.N.D.Ohio 1944, 8 Federal Rules Service 34.41, Case 7, (Inspection of subsidiary or collateral contracts with others granted in action for breach of contract or money had and received); Activated Sludge, Inc. v. Sanitary District of Chicago, D.C.N.D.Ill.1942, 6 Federal Rules Service 34.62, Case 2,* Lindley, D.J. (Defendant in patent case permitted to examine license contracts of plaintiff).

* No opinion for publication.

9 Statements taken after accidents or injuries have been opened to inspection, and, again, as in the instance of the cases relating to discovery of an adversary's records (see f.n. 8) there has been no unreconcilable disagreement among the courts: Eiseman v. Pennsylvania R. Co., D.C.E.D.Pa.1944, 3 F.R.D. 338, 339, Kalodner, D.J., "* * * I am of the opinion that the statements of the defendant's employees making reports as to the accident and submitted in the usual course of business following the accident are subject to the inspection of the plaintiff"; Revheim v. Merritt-Chapman & Scott Corp., D.C.S.D.N.Y.1942, 2 F.R.D. 361, Bright, D.J. (Plaintiff permitted to examine pre-suit statements of officers of his vessel concerning his accident or injuries); Leach v. Greif Bros. Cooperage Corp., D.C.S.D.Miss.1942, 2 F.R.D. 444,

covery proceedings.[10] They may, nevertheless, contain statements of fact which may be the source of other information which would be admissible at the trial. We think no distinction is necessarily drawn between oral and written statements. Doubtless the oral statements could not have been considered very important or they would have been committed to writing, but if the Court sees fit to tell a party to write down what he remembers of a conversation we do not see why that recorded recollection may not be made available for what it is worth.

We have no desire to restrict the operation of the rules on discovery by the application of any notion of a semi-property right in information one secures to use in a pending lawsuit against another. Nor do we balk at the notion that the hare may by discovery avail himself of the diligence of the tortoise. The policy back of all this has been discussed by experts in procedure in the Rules Committee and thoroughly debated there and elsewhere. It has become binding upon us by Supreme Court promulgation of the Rules. When such a policy has been adopted either by rule-making court or legislature judges should go along with it. We must not do with the Federal Rules what our forbears on the bench did to the Field Code and those patterned upon it.

The thing which gives us great concern in this case is the impact of the rules for discovery when they affect the lawyer-client relationship. Here is an instance which was discussed at the argument and answered squarely by counsel for appellee in his reply brief. The Court put this case: If a lawyer is required to disclose the results of his investigation into the facts, suppose a witness called by the lawyer for his client, in the course of cross-examination, makes a statement inconsistent with a former statement made to the lawyer and put into possession of the other side through discovery process. May not this lawyer be called to verify the terms of the

---

Mize, D.J. (Inspection of plaintiff's own statement plus that of a witness, given to defendant by plaintiff's agent, permitted); Caroballo v. Export Steamship Corp., D.C.S.D.N.Y.1940, 3 Federal Rules Service 34.411, Case 2, Hulbert, D.J. (Discovery of reports and statements obtained by adversary after accident and before suit, granted).

Inspection has even been granted to bills and vouchers relating to damages: Phœnix Insurance Co. v. Cline, D.C.D.Mass.1942, 3 F.R.D. 354, Ford, D.J.

An investigator's report in an action for malicious prosecution has also been held open to discovery: VanSant v. American Express Co., D.C.E.D.Pa.1944, 8 Federal Rules Service 34.41, Case 4, Bard, D.J.

Documents pertaining to former litigation on the same subject matter have also been opened to inspection: E. W. Bliss Co. v. Cold Metal Process Co., D.C.N.D.Ohio, 1940, 1 F.R.D. 193, Wilkin, D.J.

[10] "The examining party is not restricted to securing testimony that would be admissible in evidence at the trial. He may go further and obtain information that may be useful in securing such evidence." Holtzoff, New Federal Procedure And The Courts p. 75 (1940) published by American Bar Association. The same considerations that apply in Rule 26 apply in Rule 34 not to make admissibility in evidence a test for laying bare the facts of the case before trial. Rosseau v. Langley, D.C.S.D.N.Y.1945, 9 Federal Rules Service, 34.41, Case 1, Goddard, D.J.; Walling v. Richmond Screw Anchor Co., Inc., D.C.E.D.N.Y. 1943, 4 F.R.D. 265, Moscowitz, D.J. (Rules permit inspection of hearsay documents though in this case the court exercised its discretion not to permit inspection); Mackerer v. New York Central R. Co., D.C.E.D.N.Y.1940, 1 F.R.D. 408, Moscowitz, D.J.; Blank v. Great Northern Ry. Co., D.C.D.Minn.1943, 4 F.R.D. 213, Sullivan, D.J. (While court says that the document need not be evidence for the party asking inspection it seems to intimate in one place, however, that the document is open to discovery because it could be used as evidence by defendant). As a corrollary to the principle that admissibility is not a test for pretrial discovery, Hoffman v. Palmer, 2 Cir., 1942, 129 F.2d 976, affirmed 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719, indicates that inspection of a document does not make it admissible in evidence.

Contra: Condry v. Buckeye S. S. Co., D.C.W.D.Pa.1945, 4 F.R.D. 310, Schoonmaker, D.J.; Galbreath v. Bond Stores, Inc., D.C.W.D.Mo.1944, 8 Federal Rules Service 34.11, Case 1, Otis, D.J. (Dictum to the effect that documents not admissible in evidence as hearsay or irrelevant would not be subject to discovery under Rule 34); Poppino v. Jones Store Co., D.C.W.D.Mo.1940, 1 F.R.D. 215, Otis, D.J. (No inspection of documents not admissible in evidence for moving party though they relate to adversary's case.)

original statement and thus become a witness against his own client? Appellee says yes and frankly states, "We see no reason why there should be any criticism of this practice."

The Court does not take such a light-hearted view of the situation. Professional tradition that it is undesirable that a lawyer should be both advocate and witness, for his client finds expression in Section 19 of the Canons of Ethics.[11] The lawyer as a witness against his client must have seemed too remote a possibility to the framers of the Canons to be included, for it is not covered expressly. Such a situation certainly puts the lawyer into the position where he cannot show that undivided allegiance to the client's cause which the relationship postulates. Must he, then, withdraw from the case? If so, there seems to be offered an easy and tempting means for the advocate for one side to get rid of a dangerous adversary.

Admittedly the Rules do not expressly cover the exact question presented here. Obviously its further consideration by the Advisory Committee has emphasized rather than solved the difficulties inherent in the question.[12] District Courts have for varying reasons, or no expressed reasons at all, reached conclusions both ways.[13]

Our consideration of the problem leads us to the conclusion that there is more in the exception of "privilege" than has been

---

[11] "Appearance of Lawyer As Witness For His Client. When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client."

[12] Second Draft of Proposed Amendments to Federal Rules of Civil Procedure by Walter P. Armstrong (1945) 31 American Bar Association Journal 497 "Only in one instance does the Committee seem to have been unable to come to a definite conclusion. In dealing with the extent to which one may delve into an adversary's investigation file and examine statements of witnesses, photographs, maps, etc. procured in preparation for trial the Committee seems to have taken the counsel of despair."

The Advisory Committee in its Second Preliminary Draft of Proposed Amendments, pp. 39-40, states that, "such files and their contents are not absolutely privileged" and add that "such files can [not] be delved into in every case without restriction." Of its own proposed amendment it says, "the principal objection to it is that it does not establish any standard for the exercise of judicial discretion * * *" It concludes with a plea that, "If the members of the profession can formulate a general statement of the standard for exercise of discretion, the Committee will welcome it and give it careful consideration."

[13] An examination of the District Court decisions in general accord with our view indicates the undefined extent and uncertain nature of their rationale. The cases are led by McCarthy v. Palmer, D.C.E.D. N.Y.1939, 29 F.Supp. 585, 586, affirmed 2 Cir., 113 F.2d 721, certiorari denied 311 U.S. 680, 61 S.Ct. 50, 85 L.Ed. 438, Moscowitz, D.J.; the relevant language there is: "In connection with the particular evidence in question, a further problem was brought into focus, namely, the extent to which the new Rules of Civil Procedure permit the examination by one party of affidavits and similar materials secured by the other party by independent investigation incident to the preparation of the case for trial. While the Rules of Civil Procedure were designed to permit liberal examination and discovery, they were not intended to be made the vehicle through which one litigant could make use of his opponent's preparation of his case. To use them in such a manner would penalize the diligent and place a premium on laziness. It is fair to assume that, except in the most unusual circumstances, no such result was intended." It should be noted that the principal issues in that case related to damages and the question whether inspection of a document made it admissible in evidence. Since affirmance on its salient issues this case has been questioned by its own circuit court of appeals in Hoffman v. Palmer, 2 Cir., 129 F.2d 976, 996, affirmed 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719, which indicated a different view on the question of inspection making a document admissible. See Note in (1940) 53 Harv.L.Rev. 882 for further criticism. It has further been explained on its damages issue in Hetrick v. Reading Co., D. C.D.N.J.1941, 39 F.Supp. 22. Two other cases rely entirely on its authority to reach a similar conclusion: Piorkowski v. Socony Vacuum Oil Co., D.C.M.D.Pa. 1940, 1 F.R.D. 407, Watson, D.J. and Courteau v. Interlake Steamship Co., D. C.W.D.Mich.1941, 1 F.R.D. 525. Two other cases also rely on it as precedent: In Zeoli v. New York Central R. Co., D.

so far developed. First, on this point, let us look at the language of the Rules. Rule 26(b), on the subject of depositions, says that the deponent may be examined "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Rule 34 permits the ordering of production, inspection, etc., of documents and other things "not privileged."

Now we get into deep water. Rule 33 (interrogatories), which the Committee Notes say incorporates Equity Rule 58, 28 U.S.C.A. § 723 Appendix, is by its terms applicable only to adverse parties, not their agents, nor, a fortiori, their legal counselors. If the party is an association, corporation, or partnership, special provision is made. On Rule 33 alone interrogatories were not authorized to be directed to Mr. Fortenbaugh, and he certainly could not be in contempt for failing to answer an interrogatory not authorized by the Rules.

■ But there is more to the story. Rule 26 (depositions pending action) allows the testimony of "any person, whether a party or not" to be taken by deposition "upon oral examination or written interrogatories." To have interrogatories addressed to one not a party to the litigation, therefore, the procedure must be under Rule 26, not Rule 33.

■ As already stated, Rule 26 has a privilege limitation upon the scope of examination. Rule 33 says nothing about privilege. We think that Rule 33 is subject to the same privilege limitation as Rules 26 and 34. One reason for so concluding is that Rule 26 covers interrogatories as well as oral testimony, and the privilege Rule stated in 26 carries over to 33. Another reason is that we cannot believe that such omission was intended. We can see no logic in leaving it out of 33 and putting it in 26 and 34. And we cannot think a rule as old as that of privilege is to be lightly thrown overboard.

So now we have, upon examining the language of the Rules, pushed Mr. Fortenbaugh out from under Rule 33 but kept him

---

C.E.D.N.Y.1945, 8 Federal Rules Service 34.411, Case 3, Kennedy, D.J. the court is more influenced by the fact that the documents did not "come under the regular entry rule" than by the factor of preparation for trial. In Byers Theaters v. Murphy, D.C.W.D.Va.1940, infra, Barksdale, D.J. the inspection was opposed by defendant only on the grounds of irrelevancy and confidential trade secrets. The case of Stark v. American Dredging Co., D.C.E.D.Pa.1944, 3 F.R.D. 300, Kirkpatrick, D.J., is also often cited. But in a later decision the same judge supported by the District Court en banc reached an opposite result. Hickman v. Taylor & Anderson, 4 F.R.D. 479, is the later decision referred to, and that is the case out of which the present appeal has grown. Nelson v. Reid, D.C.S.D.Fla. 1944, 4 F.R.D. 199, Holland, D.J., cites the Stark case as its principal authority. Midland Steel Products Co. v. Clark Equipment Co., D.C.W.D.Mich.1945, 9 Federal Rules Service 34.411, Case 1, Raymond, D.J. cites almost all the cases just discussed, McCarthy, Courteau, Stark, Nelson as "the weight of authority" for the same view. Topolinsky v. Palmer, 8 Federal Rules Service 34.411, Case 2, gives no citations at all in reaching a similar result. And Condry v. Buckeye S. S. Co., D.C.W.D.Pa.1945, 4 F.R.D. 310, Schoonmaker, D.J., reached the same result but on the ground that the documents involved were not "evidence material to any matter involved in the action" and were "not evidence at all * * *".

The cases apparently contra are equally cloudy in definition and limited in scope: Thus documents constituting part of preparation for trial have been held open to discovery unless privileged, or not specifically identified, or not material to the controversy, or in someone else's possession, but not immune from inspection merely because they are part of the preparation for trial. Rosseau v. Langley, D.C.S.D.N.Y.1945, 9 Federal Rules Service 34.41, Case 1, Goddard, D.J. (dictum); Farr v. Delaware, Lackawanna & Western R. Co., D.C.S.D.N.Y.1944, 8 Federal Rules Service 34.35, Case 1, Hulbert, D. J. "The plaintiff is entitled to see any report which was made by any officer or employee made in the regular course of the performance of his duty in relation to the happening of the accident out of which this action arises. But any statement or other information acquired by or through the direction of counsel after notice of the accident and in furtherance of his preparation for the defense of the action, may be regarded as confidential, unless and until the same is presented to the court for examination and a specific ruling made with respect thereto."; Blank v. Great Northern Ry. Co., D.C. D.Minn.1943, 4 F.R.D. 213, Sullivan, D. J., "In the present case the statement was given by the adverse party, the plaintiff to the defendant's Claim Agent. There appears to be no reason for the protection of such statement as a privileged communication from the inspection thereof by the plaintiff."

in under Rule 26. We have the scope of examination under all three Rules subject to the limitation of privilege.

The heart of the case is what we put into that concept. The Rules, so far at any rate, do not give us the formula. Inspection of the dictionary upon the point proves stimulating to ideas, but not resolving of difficulties.

■ We do not doubt that privilege as used in the Rules includes all that is comprehended in the rule of testimonial exclusion of confidential statements made by a client to his lawyer.[14] That would not exclude the material asked for here, since the statements the lawyer got and interrogatories asked for were not from the client but third parties. Such are not included in the rule of exclusion.[15] There are decisions which have extended the privilege to other situations.[16] These tend to show a feeling on the part of judges that "privilege" as the term is used in the Federal Rule and "privilege" as one finds the term in the law of evidence as a ground for excluding testimony are not identical. We agree that they are not, but that fact does not take us very far along the road to settlement of our problem.

■ We are clear in our own minds, however, that "privilege" as used in the

---

[14] Wigmore on Evidence (3rd Ed.) § 2292. "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."

[15] Wigmore on Evidence (3rd Ed.) § 2317.

[16] The English experience with discovery stems from O. 31, R.R. 1–29. While the statute is not worded as our new Federal Rules are, the general analysis of that statute is helpful. Digest of The Law of Discovery with Practice Notes by Judge Bray (2nd ed.) p. 24 states, "The rules now provide that discovery is not to be ordered when and so far as the Court or Judge shall be of opinion that it is not necessary either for disposing fairly of the cause or matter or for saving costs * * * But in addition to this protection there are four grounds upon which it can be resisted as of right, (a) as being criminatory or penal, (b) as being within the doctrine of legal professional privilege, (c) as disclosing the party's evidence, (d) as being injurious to public interests." We do not mean to imply that the same four grounds can be used to resist discovery under the Federal Rules of Civil Procedure, but we do suggest that this serves as a convenient analytical pattern to separate the various types of cases that are loosely grouped under privilege in our own country.

Using the convenient breakdown so provided, we find many extensions of privilege in the American cases which seem to belong to the class delineated by Judge Bray as "injurious to public interests." These include: Bowles v. Ackerman, D.C.S.D.N.Y.1945, 4 F.R.D. 260, Bright, D. J. (O.P.A. served with subpoena duces tecum may not refuse to produce documents obtained from defendant on ground that the documents are considered confidential under Emergency Price Control Act); VanSant v. American Express Co., D.C.E.D.Pa.1944, 8 Federal Rules Service 34.41, Case 4, Bard, D.J. (Reports of investigation into forgery granted inspection in action ●for malicious prosecution despite claim that public interest required nature and method of investigation to be secret. Court said secret or confidential elements of report could be preserved by appointment of a master); Walling v. Comet Carriers, Inc., D.C.S.D.N.Y.1944, 3 F.R.D. 442, Caffey, D.J. (No discovery of documents in custody of government when privilege because of regulation of Secretary of Labor prohibiting disclosure except with his consent). To same effect where order of Attorney General relating to documents of Department of Justice involved: United States ex rel. Bayarsky v. Brooks, D.C.D.N.J.1943, 51 F. Supp. 974, Fake, D.J. Cf. Walling v. Richmond Screw Anchor Co., Inc., D.C. E.D.N.Y.1943, 4 F.R.D. 265, 269, Moscowitz, D.J., "This Court refuses to go so far as to decide that any and all records of a governmental agency are of a confidential nature and therefore privileged." Names of allegedly underpaid employees not so privileged. Western States Machine Co. v. S. S. Hepworth Co., D.C.E.D.N.Y.1941, 1 F.R.D. 766, 767, Abruzzo, D.J. In a patent case "the discretion of the Court should be exercised to prevent disclosure of trade secrets in advance of the trial."; Byers Theaters, Inc., v. Murphy, D.C.W.D.Va. 1940, 1 F.R.D. 286, 288, Barksdale, D.J. "Nor do I think that the prices, as shown by the contracts, partake of the nature of trade secrets or are confidential to such an extent as to give them any peculiar sanctity * * *."

Rules comprehends the material asked for in the interrogatory which is the foundation of this proceeding, namely, memoranda of talks with witnesses, signed statements made by witnesses, the lawyer's recollection of talks with witnesses. Our difficulty comes, not in any lack of confidence in our judgment upon the point, but in seeking a phrasing of our conclusion to give it wide enough scope without going too far. For instance, one is tempted to say that the lawyer's files are impregnable against any inquiry from outside. But that depends upon what the lawyer puts in them. A piece of a machine which has hurt someone, a document needed to show a fact, many things required in a lawsuit find their way from client's hands to lawyer's file and are not to be concealed until the day of trial for that reason. But here we are dealing with intangible things, the results of the lawyer's use of his tongue, his pen, and his head, for his client. This was talked about as the "work product of the lawyer" in the argument of the case. This is a phrase which seems pretty well to describe what we are after, though we hesitate to adopt it as a label for our concept for fear that it may contain implications not now apparent to us. It does with fair accuracy describe what we are excluding here under the term privilege. It seems likewise to be about what is represented by the English law though the difference in phraseology of the rules makes reference only moderately helpful.[17]

The reason for this frank extension of privilege beyond testimonial exclusion rests on the same foundation that the rule of evidence does. It is the same foundation upon which we base the immunity of the judge for his official acts in that capacity. It is found again in the non-liability of judge, counsel and witnesses for defamation for what they say in the trial of a lawsuit. In none of these instances is the immunity based on the convenience of the individual judge, lawyer or client. It is rather, a rule of public policy, and the policy is to aid people who have lawsuits and prospective lawsuits. Those members of the public who have matters to be settled through lawyers and through litigation should be free to make full disclosure to their advisers[18] and to have those advisers and other persons concerned in the litigation free to put their whole-souled efforts into the business while it is carried on.[19] The soundness of this policy is not capable of laboratory demonstration. Enunciated and applied as it necessarily is by members of the guild which derives incidental benefit from its application, it is open to the gibes of the cynical. We believe it is sound policy; we know that it is irrefutably established in the law. That the principle finds application in the facts presented to us on this appeal we are all thoroughly convinced.

The order of the District Court is reversed and the case remanded for further proceedings not inconsistent with this opinion.

---

[17] See authority cited in note 16.

[18] Wigmore (3rd Ed.) § 2291.

[19] The Restatement speaks of this policy in several places, thus Restatement, Torts § 586 Comment (a): "a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients. Therefore the privilege [of defamation in judicial proceedings] is absolute." In Restatement, Torts § 637 Comment (a) the same view is expressed with respect to absolute privilege of attorneys in disparagement of property during judicial proceedings.