ROBERTS v. PITTSBURGH–DES MOINES
CO. et al., and 37 other cases.

VICTORY v. SAME and 24 other cases.

Civil Actions Nos. 5090–5124, 5134, 5137,
5147–5151, 4761–4764, 5073, 5089.

District Court, W. D. Pennsylvania.

Sept. 13, 1946.

Carl E. Glock, of Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., for defendants.

GOURLEY, District Judge.

Defendants have filed a motion under Federal Rules of Civil Procedure, rule 12 (e), 28 U.S.C.A. following section 723c, in all of the above captioned cases for a more definite statement or for bill of particulars. There are two different forms of complaint —a very brief and simple form in the first group of cases, and a very elaborate and detailed form in the second group of cases. It appears there are thirty-eight cases in the first group and twenty-five cases in the second group.

All of the suits are death claims arising out of a gas explosion and fire which occurred in Cleveland, Ohio, on October 20, 1944, at the liquefied gas plant of the East Ohio Gas Company. This plant employed a process of chilling and compressing natural gas to a low temperature into a liquid condition and storing the liquid in steel tanks until needed for the public gas supply of the Cleveland District. The East Ohio Gas Company as owner of the plant entered into contracts with Gas Machinery Company for the erection of four tanks. The Gas Machinery Company in turn entered into contracts with Pittsburgh-Des Moines Steel Company, one of the defendants, as an independent contractor to construct the tanks, three of which were built in 1940 and 1941, and the fourth in 1942 and 1943, all on the property of East Ohio Gas Company in Cleveland. The Pittsburgh-Des Moines Company fabricates steel at its plant on Neville Island, and the Pittsburgh Des Moines Steel Company, as an erecting company, constructs jobs in the field. The East Ohio Gas Company participated in the preparation of designs and specifications for the tanks and approved them and caused the foundations of the tanks, certain parts of the tanks, and the accompanying plant and equipment to be constructed or furnished by contractors other than Pittsburgh-Des Moines Steel Company. The tanks were constructed under the observation and inspection of the Gas Company and upon completion were

Premo Columbus, of Pittsburgh, Pa., Marvin C. Harrison, of Harrison & Marshman, and William K. Thomas, all of Cleveland, Ohio, Ella Graubart, of Patterson, Crawford, Arensberg & Dunn, all of Pittsburgh, Pa., for plaintiff.

accepted by it. The first three tanks were used for several years before the accident of October 20, 1944, and the fourth tank, which was completed in the spring of 1943, was in use by the Gas Company from that time until the time of the accident.

At the time of trial, it would be definitely a matter of issue whether the East Ohio Gas Company at the time of the accident and for a long time prior thereto had not only ownership but possession and control of the tanks.

Since all of the complaints in each of the particular cases follow the same pattern, the Court will, therefore, consider in passing on the motion now pending for a more definite statement or for a bill of particulars by referring to one complaint as a sample of all of the complaints in each group.

The Court will first consider the form of complaint which has been designated by counsel during argument as the long complaint, or fancy form of pleading, said complaint sets forth various items of recklessness and negligence on the part of one or more of the defendants in the following respects:

"(a) In designing and constructing said tanks, and particularly the cylindrical tank without adequate outside dykes to retain said liquid gas in the event of a rupture of the walls of the tank.

"(b) In using steel of such defective composition and improper treatment that it was of insufficient strength and toughness to resist the strains created in said tank, and was likely to be brittle and to shatter upon slight impact or strain.

"(c) In designing and building said tanks at a place where there was almost continuous vibration and ground tremors, such that the rock wool used as insulation for the cylindrical tank was likely to disintegrate and collapse and to lose a substantial part of its insulating effect; and so that the steel of the tank was likely to become fatigued and be rendered increasingly brittle and subject to fracture.

"(d) In failing to reduce the strains and stresses which had been created in said cylindrical tank in the process of erecting it and welding its constituent parts by an appropriate heat treatment, passing or otherwise.

"(e) In so designing and constructing said tanks that any spillage or drainage therefrom would be drained into a covered pit or sump, and in failing to provide an anti-flash-back guard for the said pit.

"(f) In designing the said tank so defectively and improperly that great internal strains were set up by the presence of liquid gas therein, which strains were due to the differences in contraction of the component parts of said tank.

"(g) In designing the connecting pipes and valves which connected the various tanks with the general liquefying system of said plant in such a manner that there was inadequate protection against sudden surges of pressure in said tank.

"(h) In designing said tank in such a manner that no device was provided for agitating the liquid contents thereof or otherwise protecting against the hazards of vapor pressure within said liquids, and so as to avoid the hazards of surge or "bumping" arising therefrom.

"(i) In failing to design or provide an effective cushioning device to protect the said tank and its constituent members, and particularly the inner shell thereof, from the dangers of continued vibration and the fatigue resulting therefrom.

"(j) In designing said tank in the form of a cylinder instead of a sphere when said cylindrical form was likely to rupture when put to the use for which it was designed; and in further constructing said cylindrical tank without adequate engineering data warranting its substitution for the spherical form which had been formerly used.

"(k) In failing to provide adequate supports or materials of sufficient strength to support the weight of said cylinder and its liquid contents, and in failing further to make adequate laboratory tests to determine the effect of extremely low temperatures upon the materials thus used in the presence of the strains incidental to the weight and support of such a structure and the vibrations encountered at the site of said tanks.

"(l) In using for insulation a substance untested for such purpose, and which the defendants knew or ought to have known was likely to disintegrate and lose much of its insulating value, and in failing to provide adequate insulation between the inner and outer walls of said tank. _

"(m) In so designing and erecting said tank as to make it difficult, if not impossible, to keep the insulation in proper position or to replace defective insulation or to repair adequately leaks in the structure of said tank when such leaks should appear.

"(n) In failing to make adequate tests of the effects of liquid gas upon the materials and alloys used in said structure before attempting to erect said tank.

"(o) In designing, planning and erecting said tank at a place and in such close proximity to other gas tanks that any leakage from one or the other of said tanks was likely to cause conflagrations and explosions in the other tanks.

"(p) In so designing said tank and other spherical tanks in the immediate vicinity without any adequate safety devices or safeguards around each of said tanks so as to permit said gas, in the event of leakage, to be protected against fires and explosions; and particularly in failing to equip said tanks with outside sprinkler systems or with Fossite or carbon dioxide safety provisions.

"(q) In so designing said tank that there was no adequate provisions to give warning by automatic machinery or otherwise of the fact that leakage was taking place from said tank, or that a rupture or fracture of the inner shell of said tank had taken place.

"(r) In giving instructions to the employees of The East Ohio Gas Company after leakage had begun, to cause the frost spots resulting from said leakage to be removed by the process of applying steam blowers, when said process was hazardous and dangerous and was likely to cause ruptures to be enlarged and made more dangerous; and when further, said employees of The East Ohio Gas Company ought to have been instructed immediately to withdraw said liquid gas from said tank.

"(s) In designing said system of tanks in such a manner as to fail to provide a spare or storage tank available for the storage of liquid gas in the event that one of said tanks developed ruptures or leakage, such as to require an immediate and early emptying thereof."

The defendants claim that the complaint fails to state facts showing that at the time and place of the accident, the defendants owed a legal duty to the plaintiffs in that (1) the complaint fails to state what caused the tanks to break.

In answer to this objection, the Court believes that the allegations of negligence set forth in Paragraph 6, subsections b, c, d, f, g, h, i, j, part of k, l, m, and n explain this in detail. Therefore, in connection with the first objection the Court believes that sufficient acts of negligence have been set forth for the plaintiffs to endeavor to prove that the tank was caused to rupture or break due to acts of commission or omission just referred to and which appear in Paragraph 6 of the complaint.

The defendants next object to the complaint for the reason that (2) it does not set forth any facts showing a basis for the alleged conclusion that the defendants with others jointly determined to erect a gas plant and perform various acts in a joint venture and enterprise.

It appears that the complainants have set forth in Paragraph 4 the circumstances under which it is claimed the defendants became a party to the construction of the tank which it is claimed broke or became ruptured, and it is believed that the allegations of fact have been set forth with sufficient definiteness for the defendants to answer.

The defendants next contend that (3) the complaint fails to state whether the alleged public nuisance was the tank structure delivered by Pittsburgh-Des Moines Steel Company to the East Ohio Gas Company, or whether it was the operation of the entire gas liquefaction, storage and regasifying plant after its completion.

From a reading of the complaint it appears that in Paragraph 6, subsections a to q, inclusive, and subsection s, reference is specifically made to the construction of the

tank which was subsequently delivered by the defendants to the East Ohio Gas Company. It further appears that Paragraph 6, subsection r, specifically refers to employees of the defendant giving instructions to the East Ohio Gas Company as to what consideration should be given certain conditions which arose after the completion of the construction by the defendants and delivery to the Gas Company. It appears to the Court that the allegations in the complaint, therefore, specifically set forth that the acts of negligence on the part of the defendants were comprised of two parts— one of negligence in the construction, and the other of negligence in the instructions given by employees of the defendant to the Gas Company after construction.

Objection was furthermore made in that (4) the complaint does not set forth whether defendants, or other persons, were in ownership, possession, control, and operation of the tank at the time it ruptured or broke.

This objection I believe is answered by reference being had to the comments made by the Court in consideration of the third objection.

■ It is next contended that (5) the complaint fails to set forth what was the legal relationship or status of plaintiffs' decedents toward the owner of the tank, whether as employees of the owner, licensees, invitees, third party strangers off the gas plant premises, or some other relationship.

It appears from a reading of the complaint that it does not set forth whether the decedents were employees of the East Ohio Gas Company, Pittsburgh-Des Moines Steel Company, a co-partnership, Pittsburgh-Des Moines Company, a corporation, licensees, invitees, third party strangers off the premises of the Gas Company, or some other relation. Since the liability, if any, of the defendants might vary in law, depending on the status of the deceased persons, or the injured claimants at the time the injuries were received it is the belief of the Court that the complaint should set forth the legal status of the decedents or injured persons, and more particularly their relationship, if any, with the East Ohio Gas Company or any of its subsidiaries, their similar status, if any, with the defendants in this action, or if they were licensees, invitees, third party strangers off the premises of the Gas Company, or whatever their relationship might be.

■ It is next claimed by the defendants that (6) the complaint fails to set forth facts as to whether subsequent to the completion of the tank and its delivery by Pittsburgh-Des Moines Steel Company to the owner it remained unchanged in design and construction to the date of the accident.

It is true that there is no allegation in the complaint as to whether or not the defendants made any changes in design and construction of the tank between the date of completion and delivery to the East Ohio Gas Company, and the date of the accident, other than that set forth in Paragraph 6, subsection r, of the complaint which refers only to the procedure which the defendants recommended to the Gas Company to follow in order to remove frost spots from the tank. If the facts and circumstances in the mind of the pleader are such that it is not deemed advisable, for one reason or another, to set forth facts which would show some additional control on the part of the defendants from the date of completion and delivery to the Gas Company and the date of the accident, I know of no authority which could compel the plaintiffs to set forth a basis for a cause of action which it is not desired to use.

■ It is next averred that (7) the complaint fails to set forth a cause of action for the reason that no allegation appears in the complaint whether the owner of the tanks failed to inspect and test them when Pittsburgh-Des Moines Steel Company completed and delivered them.

The complaint sets forth no cause of action against the East Ohio Gas Company, and it does not appear to me to be material as to any acts of commission or omission on the part of the ultimate owner of said tank, the East Ohio Gas Company.

It is next averred that (8) the complaint does not set forth any legal duty on the part of the defendants to the plaintiffs for the reason that no allegation appears

whether defendants, as their part in the alleged joint venture, were the only persons who provided plans, specifications, materials and supervision for the construction of tanks; or whether the owner did not approve of all plans and specifications; or whether the owner and other independent contractors did not also provide certain amount of the plans, specifications, materials and supervision for the construction of the tanks and the enjoined devices for the liquefaction and regasifying of natural gas.

It appears to the Court that in Paragraph 4 of the complaint it has been sufficiently set forth that the defendants provided plans, specifications, materials and supervision for the construction of certain large steel tanks for the storage of gas in its liquid condition, and further contributed thereto the use of certain patent rights held by the defendants for the construction of such tanks. Since this cause of action was only filed against the defendants who are now before the Court, it does not appear to me to be of any relevancy whether or not any other person or persons had any concern, directly or indirectly, with the construction of said tanks. The cause of action of the plaintiffs is directed against the defendants alone, and if the plaintiffs are unable to prove that the breaking or rupture of the tank was due solely to negligence or the concurrent negligence of the defendants and some other person or persons, no right of recovery would exist as a matter of law. It appears to me, therefore, that the allegations of fact have been set forth with sufficient definiteness as to the defendants to answer in this respect.

It is furthermore claimed that (9) the complaint sets forth no cause of action against the defendants for the reason that it is not alleged whether at the time of the accident on October 20, 1944, or for a long period of time prior thereto, defendants performed any act or had any duty with respect to the maintenance, operation or control of the tanks.

As the Court reads the pleading, the alleged liability of the defendants is premised on acts of commission or omission in the original construction, and the exercise of supervision or direction on the part of the defendants through their employees in directing the removing of frost spots from the tank, all of which more fully appears in Paragraph 6, subsection r. On the basis of the legal theory which has been set forth in the complaint, it would appear, therefore, to be irrelevant whether or not the defendants had any duty with respect to the maintenance, operation or control of the tanks.

It is last contended that (10) the complaint does not set forth facts indicating a duty of defendants to design or construct safety devices for the operation of the liquefaction plant.

It appears that the plaintiffs have set forth alleged acts of negligence on the part of the defendants in Paragraph 5 and Paragraph 6, subsection o, of the complaint on the theory that the manner and place of construction constituted a public nuisance. It is true that it will be necessary for the plaintiffs to show that the failure to design or construct safety devices for the use and operation of the tanks constituted a public nuisance and, as a result thereof, said acts amounted to negligence. Furthermore, there is no reference in the complaint in any way whatsoever that the defendants were concerned in the operation of the liquefaction of the plant. As the basis for the right of recovery, it is claimed by the plaintiffs there was negligence in the construction or installation of the tanks, and the supervision or direction by employees of the defendants to the Gas Company in the removal of frost spots. It, therefore, appears to the Court that sufficient allegations of fact appear in the complaint to justify the introduction of evidence to establish negligence on the part of the defendants in their failure to install safety devices for the use of the tanks, and that it is irrelevant as to the installation or construction of safety devices for the operation of the liquefaction plant generally subsequent to the delivery of the tanks to the East Ohio Gas Company.

The Court will now consider the complaint filed by the plaintiffs which will be

referred to as "the short form of complaint."

It is contended by the defendants that the complaint fails to state facts that show any legal duty on the part of the defendants to the plaintiffs' decedent in that (1) it fails to state what specific fault or defect in design, plan, specifications or construction is charged by the plaintiffs against the defendants.

In Paragraphs 2 and 3 of the complaint it is set forth that the defendants constructed or built a tank for the storage of liquefied natural gas, and that on October 20, 1944, the tank broke or ruptured, which caused the release of said gas. Paragraph 4 of the complaint states that the death of the plaintiffs' decedent was caused in the preparation of faulty plans and specifications for the tank, and in negligently designing and constructing the tank. The basis for the cause of action is confined solely to the preparation of faulty plans and specifications, and alleged negligence in the design and construction of said tank. The allegation appears to be too general and it is somewhat similar to pleading that a person was negligent in the operation of a motor vehicle without setting forth in what respects the operator was negligent. I believe it should, therefore, be set forth in what respect or respects the defendants were negligent in the preparation of the plans and specifications, or in the design and construction of said tank.

It is next contended that (2) the complaint does not set forth whether defendants, or other persons, were in ownership, possession, control and operation of the tank at the time it broke.

As the Court reads the complaint, the cause of action of the plaintiffs is based solely on alleged negligence on the part of the defendants in the design and construction of said tank, and their proof would, therefore, be limited in this respect in order to support their right of recovery. Under the circumstances, it appears irrelevant whether any other person than the defendants were in the ownership, possession, control and operation of the tank at the time of the rupture or breaking.

It is next contended that (3) the complaint does not set forth that the defendants owed a legal duty to the plaintiffs' decedents in that it does not appear whether or not defendants exclusively designed, constructed and furnished the materials for the tank and conjoined devices for the liquefaction and regasifying of natural gas.

The cause of action is filed solely against the defendants named in this action, and if the plaintiffs can prove that the negligence of the defendants was solely or concurrently with some other person, or persons, the cause of the breaking or rupturing of the tank, a right of recovery would exist in law. It, therefore, appears to the Court that it is immaterial whether or not the defendants had control of the design or construction of the tank exclusively, or whether or not some other person, or persons were jointly responsible, directly or indirectly, for the manner or method in which the tank was constructed. The defendants furthermore have the right to bring on the record, as a party defendant or defendants, any other person or persons who they believe are liable over to the defendants or jointly responsible with them if liability exists in the first instance.

It is furthermore contended that (4) the complaint does not set forth a cause of action against the defendants for the reason it is not alleged whether subsequent to the completion of the tank and its delivery by Pittsburgh-Des Moines Steel Company to the owner it remained unchanged in design and construction to the date of the accident.

As the Court reads the complaint, the alleged liability of the defendants is based on negligence in the original design and construction of the tank and, under the circumstances, it is not deemed necessary for the plaintiffs to allege whether or not the tank in its original construction remained unchanged in any respects.

It is next averred that (5) the complaint does not set forth whether the owner of the tank failed to inspect and test it when Pittsburgh-Des Moines Steel Company completed the tank and delivered it to the owner.

It appears to the Court irrelevant whether or not the owner of the tank inspected the same at the time of the completion of the construction when it was delivered to the Gas Company for the reason that the Gas Company is not a party defendant, and if any negligence exists on the part of the Gas Company, said fact would be a matter solely for the consideration of defendants as the pleading now exists.

Defendants further contend that (6) the complaint fails to set forth any legal duty on the part of the defendants to the plaintiffs for the reason it is not alleged when, with respect to the time of the accident on October 20, 1944, the defendants performed any act or had anything to do with the tank.

The plaintiffs premise their cause of action against the defendants on the basis of negligence in the original design and construction of said tank. It, therefore, appears irrelevant as far as compelling the plaintiffs to allege or set forth any facts that would indicate any control on the part of the defendants in the maintenance and operation of the tank subsequent to delivery to the Gas Company.

It is last claimed by the defendants that (7) the complaint does not set forth what was the legal relationship or status of plaintiffs' decedents toward the defendants or toward the owner of the tank, whether employees of the owner, licensees, invitees, third party strangers off the premises, or otherwise.

It appears from a reading of the complaint that it does not set forth whether the decedents were employees of the East Ohio Gas Company, Pittsburgh-Des Moines Steel Company, a co-partnership, Pittsburgh-Des Moines Company, a corporation, licensees, invitees, third parties off the premises of the Gas Company, or some other relation. Since the liability, if any, of the defendants might vary in law, depending on the status of a deceased person or the injured claimant at the time the injuries were received, it is the belief of the Court that the complaint should set forth the legal status of the decedents or injured claimants and, more particularly their relationship, if any, with the East

Ohio Gas Company or any of its subsidiaries, their similar status, if any, with the defendants in this action, or if they were licensees, invitees, third party strangers off the premises of the Gas Company, or whatever their relationship might be.

These complaints certainly display an exact opposite approach to the procedure of pleading, and the Court has endeavored, in considering the motion filed by the defendants in each of the series of cases, keep in mind that under the general Rules of Civil Procedure, the function of the complaint is to afford fair notice to the adversary of the nature and basis of the claim asserted and a general indication of the type of litigation involved.

The Court has endeavored not to be technical and not to place the defendants in a position where it will be impossible or unreasonable for them to answer the allegations in the complaint as they will exist after amendments have been filed in accordance with this Order. It has been definitely ruled in this Circuit that a plaintiff sets forth a claim for relief when he makes a short and plain statement of the claim, showing that the pleader is entitled to relief. Technicalities are no longer of their former importance, and a short statement which fairly gives notice of the nature of the claim is sufficient compliance with the requirements of the Rules of Federal Procedure. Continental Colliers v. Shober, 3 Cir., 130 F.2d 631; Sierocinski v. E. I. Du Pont De Nemours & Co., 3 Cir., 103 F.2d 843.

If after the amended complaints are filed, as herein directed, and answers are filed to the various complaints as amended, any matter which either party litigant believes would be of any material importance, ample authority exists under our Federal Rules of Civil Procedure to have said matter or thing made available. It is realized that this can either be done by interrogatories or bill of discovery.

Every party to litigation is entitled to secure all evidence, information and documents germane to the issues even if they are in the possession of an adverse party and such matters should be made available before trial. The purpose is not

only to facilitate the obtaining of the evidence for use at trial but also to reduce the element of surprise to a minimum and shorten trials. In other words, any matter that any party litigant might have, or know, is available to the opposing party litigant, other than the work product of the lawyer. Hickman v. Taylor, 3 Cir., 153 F.2d 212.

 The Court realizes that at the time of trial these cases will necessitate the calling of witnesses who are scientifically trained in their various skills or endeavors, and, no doubt, many professional opinions. I believe the cases are sufficiently involved to justify special consideration by way of pretrial conference a reasonable length of time prior to the actual date of trial.

In addition to the ruling made on the various cases for a more specific statement or bill of particulars, at the time of listing of any of the above cases for trial, the Clerk of Courts will set for pretrial conference at least forty-five (45) days prior to the date of trial the case which is first to be called for judicial determination.