**LUIS C. FORTEZA e HIJOS, INC.,**
**Plaintiff-Appellee,**

v.

**Tom MILLS et al.,**
**Defendants-Appellants.**

**No. 75–1224.**

United States Court of Appeals,
First Circuit.

Argued Feb. 6, 1976.
Decided April 23, 1976.

---

**416**

Ivan M. Rittenberg, for defendants-appellants.

Roberto J. Matos, Hato Rey, P. R., for plaintiff-appellee.

Before McENTEE, CAMPBELL and MATTHES *, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Tom Mills & Tom Mills Brokerage Co., Inc. (hereinafter collectively "Tom Mills") appeal from a judgment entered without trial after Tom Mills refused to compromise this action in accordance with terms worked out by his attorney. The judgment is for substantially the same amounts as called for in the repudiated settlement, and Mills challenges the district court's power to enter such a judgment. As the events leading up to this rather unusual disposition are important to our view of the case, we shall state them in detail.

Plaintiff, a Puerto Rico firm, brought this contract action in April, 1969, against several defendants including Tom Mills, all of whom were residents of the continental United States. After a short delay, Tom Mills retained counsel in the District of Puerto Rico where the case was brought, who filed motions to dismiss and quash service of process. After the court denied these motions, Mills' attorneys withdrew, to be replaced by others. Except for completion of pleadings and filing of interrogatories and responses, little else happened until May, 1974, when the case was called "for some disposition" before the United States Magistrate. Although neither side appeared at the time appointed, there seems to have been a pretrial conference in September, 1974, and in early December, 1974, the court entered a pretrial order prepared jointly and signed by counsel. The order recited, *inter alia*, that "the jurisdiction of the court is not disputed." [1] Contemporaneous with the order, counsel filed an apolo-

---

* Senior Judge of the Eighth Circuit sitting by designation.

1. So far as we are concerned, this ends Tom Mills' alternative contention on appeal that he is not subject to the district court's *in person-*am jurisdiction. *See Laird v. Air Carrier Engine Service*, 263 F.2d 948, 953 (5th Cir. 1959); McCormick on Evidence § 267, at 643–44 (2d ed. 1972).

gy for "the delay incurred in submitting said order." Counsel stated therein that their efforts to stipulate as to facts and documents had been hindered by events beyond their control, "among others a lack of cooperation of the defendants with their attorney to the extent that said attorney is considering filing a motion requesting that he be permitted to withdraw. . . ."

In late December, 1974, the court set the case for trial on March 24, 1975, at 9:00 a. m., and it also ordered the holding of a further pretrial conference on February 26, 1975. The order setting the pretrial conference instructed that each party be represented "by the attorney who expects to conduct the actual trial." Counsel were directed to meet informally at least seven days prior to the date of pretrial to discuss settlement. Parties were advised that failure to comply might result in "imposition of any sanctions the court may deem appropriate, including dismissal of the case."

On January 16, 1975, Mills' then attorney moved to withdraw, alleging that he had received, "no cooperation from the defendants in the preparation for the pretrial conference held on September 27, 1974, and for trial, which is scheduled for March 24, 1975; that the said defendants refuse to allow his advices as to the conduct of this case; they do not answer his letters; and have refused to compensate him for the services rendered in this case since he assumed their representation." The motion went on to state that the withdrawal of counsel should not cause the continuance of the further pretrial conference and of the trial, scheduled for February 26 and March 24, so long as defendants retained a new attorney within 30 days. The attorney certified that he had mailed a copy of his motion to Tom Mills in Chicago, Illinois. On January 20, 1975, the court allowed counsel's motion to withdraw, and ordered defendants to "designate new representation within twenty days from entry of this order." Defendants were "reminded of the pretrial and trial settings."

Notwithstanding the court's express directions to secure an attorney within 20 days from January 20, 1975, and its earlier order requiring the attorney who expected to conduct the actual trial to be present at the February 26 pretrial conference, and to discuss settlement with opposing counsel at least seven days prior thereto, Mills did not engage new trial counsel until well after the pretrial conference. At the time of that conference,[2] Ivan M. Rittenberg, an Illinois attorney not admitted to practice before the District Court of Puerto Rico, presented himself and moved to appear for Tom Mills "for the purpose of addressing the court on the pretrial matter set only." The Magistrate, before whom the conference was held, noted that he advised Mr. Rittenberg that defendants were in default of the court's order requiring them to get local counsel; also that "if stateside counsel is going to participate in this case, permission from the court must be requested." A request by Mr. Rittenberg for 30 days postponement was denied as "untimely and in violation of the spirit of Judge Pesquera's prior order and the crash program for the prompt disposition of cases." Counsel were advised that the case was set down for a general calendar call before Judge Grant, a visiting judge, on March 3, 1975.[3]

Neither side appeared, however, on March 3, and it was not until March 20, 1975, that newly retained local counsel filed an appearance for Tom Mills.

Five days later, on March 25, 1975, the case came on for trial before Judge Grant, both counsel appearing. From the courtroom deputy's minutes and Judge Grant's Order it appears that counsel for both parties informed the court at 9:30 a. m. that a stipulation for settlement[4] had been

---

2. Although held on February 26 as scheduled, the pretrial was delayed until the afternoon by the failure of plaintiff's counsel to appear in the morning as scheduled.

3. The order for the March 3 calendar call instructed attorneys to notify the Clerk prior thereto of cases set for trial which might settle in the pretrial conference.

4. The stipulation called for payment of $15,000 by appellants to plaintiff, $3,000 by March 25, 1975, and the balance in four installments of $3,000 each payable April 25, May 25, June 25,

reached, and this was tendered, without having been executed, to the court and was examined by it in chambers. The court thereupon dismissed the jury, and, on motion of Tom Mills' counsel, the meeting was continued until 2:00 p. m. When counsel again assembled at 2:00 p. m., Tom Mills' counsel advised the court that the settlement agreement previously reached and tendered had been rejected by defendant Tom Mills. Thereupon the court, reciting that it had dismissed the jury solely in reliance upon counsel's tendered stipulation of settlement, and that the event was yet another of many efforts of defendants to delay the prosecution of the cause and to frustrate the processes of the court, ordered judgment to enter for $15,000, $3,000 to be paid within 10 days, and the balance to be paid in four installments as in the stipulation. While the court's judgment was stated to be in accordance with the stipulation, it also provided that a penalty of an additional sum of $3,000 was to be paid to plaintiff within ten days, this sum to be credited, if all went well, against the final (July 25th) installment. If the penalty was not paid, "the pleadings of defendants will be ordered stricken and the case will proceed to trial and final judgment as on default." Thus while the judgment embodied the same ultimate figures as the stipulation of settlement, the consequences of nonperformance were different and the terms somewhat more strict.

■ If this case had gone to judgment over defendants' protests merely on the theory that defendants had given their binding voluntary assent to the settlement, we would be obliged to reverse. The stipulation of settlement was never executed, and even had Mills' attorney represented in the morning to Judge Grant that he had final authority to settle then and there, an attorney's assertion of authority to compromise is not conclusive if later challenged by his client. The question would be one of his actual authority, on which the client would be entitled to be heard, it being well-established that an attorney, merely by virtue of his employment, lacks authority to compromise. *United States v. Beebe*, 180 U.S. 343, 352, 21 S.Ct. 371, 374, 45 L.Ed. 563, 569 (1901); *Holker v. Parker*, 7 Cranch 436, 11 U.S. 436, 3 L.Ed. 396 (1813); *Barber-Colman Co. v. Magnano Corp.*, 299 F. 401 (1st Cir. 1924); *Milewski v. Roflan Co.*, 195 F.Supp. 68 (D.Mass.1961).[5]

■ But while a client is not bound by his attorney's unauthorized agreement to compromise, he may have to suffer the consequences of his attorney's conduct in the course of litigation, particularly if, as here, it is traceable to the client's lack of diligence. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Flaksa v. Little River Marine Construction Co.*, 389 F.2d 885 (5th Cir.), *cert. denied*, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968). Here we think the court could act as it did under the inherent power "necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash, supra*, 370 U.S. at 630–31, 82 S.Ct. at 1389, 8 L.Ed.2d at 738. The District of Puerto Rico, like many federal districts today, suffers from a surfeit of cases and a shortage of judges. The case in question, already five years old, was

and July 25. The plaintiff's express remedy in the event of default was to continue prosecution of the litigation and retain any sums already paid. (An alternative remedy, "to execute the amount outstanding", is inked out on the copy of the stipulation in the court's files.)

5. Plaintiff's attorney informed us during appellate argument that, prior to coming to court on the twenty-fifth, he overheard appellant's counsel speaking with Tom Mills by telephone, and it was his impression that Tom Mills had given his attorney authorization to enter into the tendered stipulation. Nonetheless, the stipulation remained unsigned, Mills' attorney sought further authority from his client following the morning session, and thereafter he reported that he lacked authority. No factual resolution of the question of actual authority could be made by us on the basis of one side's assertions; and we would further note that even if counsel had been authorized to enter into the stipulation, this would not establish approval of the stricter terms of the judgment.

scheduled before a visiting judge assigned to assist with the case backlog. The parties were put on notice toward the end of 1974 of a March 24 (later changed to March 25), 1975 trial date. When Mills' then attorney withdrew in January 1975, alleging lack of client cooperation, Mills was ordered to procure new counsel within 20 days, the court making specific reminder both of the pretrial date of February 26 and the March trial date. By failing to obtain counsel promptly as directed, Mills rendered himself unable to enter into settlement negotiations that were supposed to precede the February 26 pretrial. He also precluded meaningful participation in the pretrial conference itself, which by bringing the parties together in the presence of a judicial officer, would have permitted them to explore the possibility of settlement prior to trial when there was ample time for discussion with clients and among counsel. Mr. Rittenberg's last minute appearance was totally unsatisfactory for this purpose, not merely because he was not a local attorney but, more fundamentally, because he was not trial counsel as required. By disregarding the court's orders and schedule, Mills invited the eleventh hour flap from which he now seeks relief. We think that on March 25, the court could require Mills to be ready to try if he wanted a trial; and could treat counsel's announcement of a settlement, and counsel's acquiescence in the dismissal of the jury, as a waiver of trial. Given Mills' prior lack of diligence, of which the court was aware, it was under no obligation to waste valuable time, perhaps as much as a day, rescheduling a trial after the earlier representations as to settlement turned out to be mistaken.

Under these circumstances, we think the court could dispose of the case, as in essence it did, by requiring Mills either to accept the terms of the settlement earlier sanctioned by his own attorney, or else to suffer entry of a default judgment. We would not go so far as to endorse imposition and execution of the involuntary settlement

alone as a sanction. Here, however, the court apparently meant to provide that if Tom Mills did not make the payments required,[6] the case was to proceed to trial and judgment as on default. See Fed.R.Civ.P. 55(b)(2). Mills would have the alternative, therefore, of participating in a hearing on damages, although the issue of liability would be foreclosed.

■ A default judgment is itself a drastic sanction that should be employed only in an extreme situation. *Flaksa v. Little River Marine Construction Co., supra.* But in an appropriate case a district court has power to default a defendant, as it does to nonsuit a plaintiff, for failure to comply with the court's orders or rules of procedure. *Id.; McGrady v. D'Andrea Electric, Inc.,* 434 F.2d 1000 (5th Cir. 1970); *see Shapiro, Bernstein & Co. v. Continental Record Co.,* 386 F.2d 426 (2d Cir. 1967). On this record we find no abuse of discretion, nor any denial of due process. *See Link v. Wabash, supra.* Other than reassembling the jury and thus condoning the dilatory tactics, the court could reasonably have believed that it had no realistic alternative to proceeding as it did. Appellants themselves suggest no alternative, while conceding that recalling the jury would have meant a day's delay.

While we affirm, it is apparent that the judgment must be revised so as to conform to current dates. In addition, as the further provisions in the judgment for a $3,000 accelerated penalty payment seem to us excessive and unnecessary, we direct that these be eliminated. The revised judgment shall provide for payment of $15,000 in the installments and sequence set forth in the initial portion of the current judgment. If appellants fail to make any of these payments on time, or choose not to do so, the unpaid amounts shall not be collected by execution, but rather the court shall thereupon enter defaults against appellants in the original action and shall, after hearing, assess damages and enter judgment in reg-

---

**6.** The provision for default is literally keyed to nonpayment of the $3,000 "penalty" but, in

context, seems meant to apply in the event of any substantial failure or refusal to comply,

ular course, which latter judgment shall, of course, be enforceable by the usual process.

*Vacated and remanded for proceedings in accordance herewith. Costs for appellee.*