**John F. XAPHES, Plaintiff,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Tucker Anthony & R.L. Day, Inc., and Mark B. Billings, Defendants.**

**Civ. No. 80–0132 P.**

United States District Court, D. Maine.

June 14, 1984.

John J. O'Leary, Jr., John S. Upton, Jeffrey D. Curtis, Portland, Me., for plaintiff.

Thomas H. Allen, Richard A. Carriuolo, Jay S. Blumenkopf, Drummond, Woodsum, Plimpton & MacMahon P.A., Portland, Me., for Merrill Lynch.

P. Benjamin Zuckerman, Charles Kadish, Portland, Me., James E. McGuire, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for Tucker, Anthony & R.L. Day, Inc.

Thomas Schulten, Priscilla F. Gray, Thomas Wheatley, Perkins, Thompson, Portland, Me., for Mark Billings.

## MEMORANDUM AND ORDER

GENE CARTER, District Judge.

### I. *Procedural Background*

This Memorandum and Order resolves a series of issues raised in motions filed herein in the course of ongoing discovery.

On July 1, 1983, Plaintiff John Xaphes filed a motion in this Court for a default judgment against Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) or, in the alternative, for sanctions

pursuant to Rule 37 of the Federal Rules of Civil Procedure. An evidentiary hearing was held on January 9 and 10, 1984. On January 20, 1984, Merrill Lynch filed a motion requesting this Court to take judicial notice (1) of all discovery filed herein and (2) that one of Xaphes' counsel had run for political office during the discovery period in this case. On January 20, 1984, Defendant Mark B. Billings filed a motion to make a written submission with regard to Xaphes' motion for sanctions. On January 23, 1984, Defendant Tucker Anthony & R.L. Day (Tucker Anthony) filed a motion to compel Xaphes to supplement his answers to Tucker Anthony's first set of interrogatories. Xaphes supplemented his answers on February 1, 1984, and on February 27, 1984, Tucker Anthony filed a motion to compel further answers to the interrogatories. On February 27, 1984, Tucker Anthony filed a request for leave to file a supplemental memorandum in support of its motion to dismiss, such motion having been filed on January 12, 1981. The Magistrate's Order did not indicate any ruling on the motion to dismiss filed by Tucker Anthony as distinguished from Tucker Anthony's motion to stay pending arbitration. The Magistrate only ruled on the latter motion. Tucker Anthony has not previously contested the Magistrate's failure to rule on the former motion. Tucker Anthony also requested a hearing with respect to both its motion to dismiss and its motion to compel.

The Court has considered all of the written submissions, the evidence and oral arguments of the parties to date. The issues presented are adjudicated as indicated below.

## II. *Plaintiff's Motion for Default Judgment or Sanctions Pursuant to Rule 37, Fed.R.Civ.P.*

On August 24, 1982, Plaintiff filed a First Request for the production of documents. On October 7, 1982, Plaintiff filed a motion to compel production of those documents. On October 8, 1982, hearing was held on this motion before United States Magistrate Zarr. Magistrate Zarr's

Order was filed on October 15, 1982. The Order required, *inter alia,* that Merrill Lynch produce by October 18, 1982, all documents within the scope of paragraphs 3, 5, 17, and 20 of Plaintiff's First Request for Production of Documents. The Order also required that "Merrill Lynch shall furnish to Plaintiff, on a monthly basis, beginning November 1, 1982, until the time of commencement of trial of this action, an inventory of all documents within the scope of paragraphs 1, 2, 4, 6–10, 15, 18, 19, 22 and 23 of the Request, which inventory shall be in a form sufficient to enable Plaintiff to identify such documents for the purpose of preparing additional requests to produce." Paragraph three of Plaintiff's First Request for Production of Documents requests "[a]ny and all documents constituting Merrill Lynch's 'existing options policies and procedures' referred to in paragraph 2(a)(1) at page 7 of the SEC Order." The SEC Order referred to in Plaintiff's Request is an Order requiring Merrill Lynch to organize an Option Review Committee (ORC) to review the adequacy of all existing option policies and procedures and to suggest and implement new ones.

On October 26, 1982, Thomas Allen, Merrill Lynch's Maine counsel, mailed a copy of the SEC Order to John O'Neill, one of Merrill Lynch's in-house counsel and the person at Merrill Lynch responsible for overseeing this case. Allen's interpretation of Magistrate Zarr's Order is set forth in his letter to O'Neill:

> In brief, the Magistrate rejected our effort to confine document production to the period June 1, 1976 through September 1, 1979. We are ordered to produce documents prepared or in effect from June 1, 1976 through September 30, 1982. With respect to those paragraphs of the request [Plaintiff's] concerning the SEC investigation, the Magistrate essentially postponed any action. We *are required* to provide plaintiff with a *monthly inventory of all documents concerning the SEC investigation,* but we have

not been ordered to produce any such documents.

(Emphasis added.)

Magistrate Zarr's Order required that Merrill Lynch commence compliance with the Order by November 1, 1982. This included providing Plaintiff, on a monthly basis, with an inventory of documents generated by the ORC and any documents constituting Merrill Lynch's existing options policies and procedures. Although documents were prepared or generated by the ORC, no inventory was prepared and forwarded to Plaintiff until August 18, 1983. Among the documents generated at the ORC meetings, the first meeting having been held on November 12, 1982, are the following: (1) minutes of each meeting; (2) Interim Reports of ORC activities; (3) summaries of ORC activities; and (4) proposed revisions of Merrill Lynch's Option Compliance Programme. Other documents which were to be listed in the inventories independent of the ORC include an affidavit of John Pellegrino, a Merrill Lynch Vice President, memoranda that dealt with the ORC's review of option procedures pursuant to the SEC Order and a copy of Merrill Lynch's Option Compliance Programme (OCP).

It is clear from the evidence that both Merrill Lynch and its Maine counsel were aware of Magistrate Zarr's Order and that they were in violation of that Order after November 1, 1982. On October 26, 1982, Thomas Allen wrote to John O'Neill and informed him of the existence of Magistrate Zarr's Order and that document production was to commence on November 1, 1982. On November 16, 1982, Allen wrote to O'Neill that

> [w]e have been ordered to produce an inventory of documents related to the SEC proceeding in the mid-west. The first of the inventories is now somewhat overdue, *although that is not a major problem.* However, I need to know how soon I can expect to receive such an inventory.

(Emphasis added.) On December 7, 1982, Allen wrote to O'Neill with respect to document production and inquired at the end of his letter "[a]ny luck with the inventory of documents concerning your Options Committee?" On March 2, 1983, Allen again wrote to O'Neill:

> You may remember that we are under a court order to produce monthly inventories of certain types of documents related to the SEC proceeding in the midwest. O'Leary has not yet formally protested our failure to provide those lists, but I am not enthusiastic about the possibility that he will make that point while we are in conference with Judge Gignoux! *I would like to provide him with such an inventory at least once before April 1, 1983.* Please let me know if that will be possible.

(Emphasis added.)

On June 3, 1983, Allen wrote to Kenneth Spirer, a member of the ORC, that

> [w]e have not furnished any inventories to plaintiff's counsel since the order. *I believe it is very important to file at least one inventory several days before the discovery deadline of June 30, 1983.* In order to accomplish that goal, I would need to have a draft of the inventory in my hands during the week of June 20th.

(Emphasis added.)

As of the close of discovery on June 30, 1983, Merrill Lynch had not furnished any inventory that had been ordered by Magistrate Zarr in October 1982. On July 6, 1983, Plaintiff filed a motion for default judgment against Merrill Lynch for failure to comply with Magistrate Zarr's Order. On August 18, 1983, Merrill Lynch provided Plaintiff with the only inventory it ever produced.

On September 14, 1983, a non-evidentiary hearing on the pending motion was held before this Court. Counsel for Merrill Lynch, Thomas Allen, said with respect to the documents that he had not provided that "I had a tough time persuading my client in New York that it was related in any conceivable way to this case notwithstanding the fact that there was a Court Order."

As argument in favor of Plaintiff's motion for default judgment he asserts three arguments. First, Plaintiff argues that Merrill Lynch's disregard of this Court's Order justifies default judgment because Merrill Lynch has unduly delayed litigation in this matter resulting in a gross waste of the Court's time. Plaintiff contends that default judgment is necessary because Merrill Lynch has deliberately disregarded a court order; in short, that Merrill Lynch is in violation of the Order of October 15, 1982.

Second, Plaintiff argues that default judgment is necessary in order to deter acts of future noncompliance by Merrill Lynch with orders of this Court and other courts. Third, Plaintiff argues that default judgment is necessary in order to redress the prejudice that has accrued to him with regard to his ability to conduct effective discovery. Specifically, Plaintiff asserts that he was hindered in the taking of the depositions of the two branch managers and two account executives of Merrill Lynch because the Options Compliance Programme was not supplied to him after the Magistrate's Order and before the discovery deadline. Plaintiff also asserts that he was denied the use of the documents for purposes of discovering other admissible evidence. Plaintiff also states that he incurred substantial costs in the prosecution of his motions with respect to the Magistrate's Order.

Merrill Lynch responds to Plaintiff's arguments with a variety of excuses. Merrill Lynch contends that it complied with the "most important part" of Magistrate Zarr's Order. Merrill Lynch cites no authority for the assumption implicit in its argument, i.e., that a party is free to interpret an order of this Court and to decide *sua sponte* what parts of the order are most important. Indeed, this excuse serves only to buttress Plaintiff's argument that Merrill Lynch's noncompliance of a part of the Order was willful.

With respect to its argument that its failure to comply with the Order was not willful or in bad faith, Merrill Lynch's ex-cuses are as weak as its argument that it is entitled to comply only partially with an order of this Court. Merrill Lynch argues that the flurry of discovery initiated by the Plaintiff resulted in a diminution of importance in Merrill Lynch's mind of the inventories required to be supplied by the Order. This contention, however, is belied by the correspondence between Allen and various house counsel for Merrill Lynch wherein Allen, no less than four times, comments upon Merrill Lynch's failure to supply inventories and requests that this be done. Thus, contrary to Merrill Lynch's assertion, the Court finds that Merrill Lynch was well aware of the fact that it was in noncompliance with the Order and that it deliberately did nothing to rectify the situation.

Next, Merrill Lynch argues that there was miscommunication between Merrill Lynch's counsel in Portland and New York and that the New York counsel thought that the Order required only summaries of ORC meetings to be supplied to Plaintiff. This position is untenable because it is clear from the correspondence that counsel for Merrill Lynch in Portland was talking about inventories and not summaries. Indeed, the Order itself is explicit on this point. Even assuming that the above-asserted situation was true, Merrill Lynch was still in noncompliance because it never even supplied the summaries, production of which it admits was required by the Order.

Merrill Lynch's third, and its most disingenuous excuse is its argument that O'Neill had difficulty in contacting Andrea Yermack, a member of its own Compliance Department. O'Neill testified that he believed that Yermack was the secretary for the ORC and would, therefore, have all of the information that he needed. It is not credible on the facts derived from the testimony of O'Neill and Yermack that O'Neill, who works in the same city, in the same building and on the same floor in that building as Yermack, could not contact his fellow employee for months at a time. This excuse, and the foregoing two excuses, reinforce this Court's conclusion that Merrill Lynch's noncompliance with Magis-

trate Zarr's Order was the result of a deliberate and studied strategic decision to deny the Plaintiff, in the course of discovery, the use of the materials required to be produced by the Court's Order of October 15, 1982, and to avoid, if possible, ever producing the inventories of documents required to be produced. Had counsel for Merrill Lynch cared at all about complying with the Order they could easily have rectified the situations that are asserted as the bases for the three excuses it puts forth to justify its noncompliance. The Court finds that Merrill Lynch's noncompliance with the Order was willful and deliberate.

■ Merrill Lynch asserts that Plaintiff was not prejudiced because he received all of the disputed documents within the discovery deadline. This, however, is untrue. The original discovery deadline was April 1, 1983, and that was extended to June 30, 1983. During that time none of the disputed documents were produced. The inventories were produced on August 18, 1983, and only then was Plaintiff able to utilize them. By then discovery was precluded by the passage of the discovery cut-off date. Whether he subsequently utilized them or not, at that point his discovery strategy had already been decided. He had been unable to utilize the inventories for almost a year prior to their receipt. Merrill Lynch argues, however, that Plaintiff's discovery strategy was really not prejudiced by this situation because the documents were irrelevant and were not useful to Plaintiff at depositions. This argument is another instance of Merrill Lynch's obvious attempt to frustrate the discovery process. The determination of relevancy is solely within the province of this Court and is not in issue in determining discoverability pursuant to an extant Court order. Merrill Lynch is not entitled to undertake its own *sub rosa* determination that documents ordered by the Court to be produced need not be produced because they are thought by it not to be relevant, and the Court finds it improper for Merrill Lynch to have done so.

Merrill Lynch's only argument of any weight is that Plaintiff's silence during the ten-month period in question tends to cut against any conclusion that the failure to produce as required by the Order occasioned any serious prejudice to Plaintiff. Plaintiff's counsel, at the two hearings on this issue, expressed great outrage at the conduct of Merrill Lynch. Yet, the Court is left, without any evidence in the record, to ponder the question of the reason for the Plaintiff's silence on the production of the inventories during the period he claims he could have used them. If Plaintiff were truly in need of the disputed documents and inventories, it is reasonable to believe that he would have requested them from Merrill Lynch long before August 1983.

In this case, any prejudice that has accrued to Plaintiff is minimal in comparison to the burden that has been placed upon this Court. It is clear that Merrill Lynch has abused the discovery process, causing this Court to entertain numerous motions, a non-evidentiary hearing and an evidentiary hearing of two days duration. Moreover, this Court has had to read approximately 150 pages of memoranda generated by this Rule 37 motion. This needless burden has been inexcusably thrust upon the Court by Merrill Lynch and cannot go unredressed.

■ The type of sanction available to be imposed upon an offending party under Rule 37, Fed.R.Civ.P. is one that is "just" under the circumstances. While Rule 37 gives examples of sanctions that this Court may impose, the Rule does not limit the possibilities only to the examples contained in Rule 37.

■ Plaintiff has asked this Court for a default judgment in his favor. "A default judgment is ... a drastic sanction that should be employed only in an extreme situation." *Luis C. Forteza e Hijos, Inc. v. Mills*, 534 F.2d 415, 419 (1st Cir.1976). The policy disfavoring default judgments is based upon the proposition that cases should be disposed of on the merits except in the most unusual circumstances. *Richman v. General Motors Corp.*, 437 F.2d 196 (1st Cir.1971). Factors that the Court considers in fashioning an appropriate

sanction are the time and energy expended by the Court, *Affanato v. Merrill Bros.*, 547 F.2d 138 (1st Cir.1977), the need of *future* litigants for access to this Court, *id.*, and the egregiousness of the conduct in question, *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976).

█ As has been previously noted in this Memorandum, the Court views the conduct of Merrill Lynch in this case with great concern. Not only has Merrill Lynch burdened the judicial resources of the Court, but Merrill Lynch has exhibited a manifest disobedience of an Order of this Court. The one factor that saves Merrill Lynch from entry of default against it is the need to accord all litigants, however deserving they may be, due process under the law. *See Luis C. Forteza e Hijos, Inc. v. Mills*, 534 F.2d 415 (1st Cir.1976).[1] Although this Court finds that Merrill Lynch displayed a deliberate and willful disregard for this Court's Order, the Court, in the exercise of its discretion, does not find entry of a default against it to be appropriate in view of the damage that would be done to fundamental policies of fairness and due process. All the parties to this case have expended considerable resources in the pretrial litigation of this Complaint. It is the Court's impression from a careful study of the course of that activity that much of it was frivolous "churning" by counsel and that Merrill Lynch is not alone responsible for such conduct. Although Plaintiff has been delayed and perhaps inconvenienced by Merrill Lynch's conduct, the Court is satisfied that there is no such prejudice that results in any inability of Plaintiff to effectively prosecute his Complaint. The Court is not convinced that any of the counsel in this case have yet summoned the discipline to give up the satisfaction of the pretrial fray in the interest of moving their client's case to an expeditious resolution at trial. It seems to have escaped the attention of all counsel that trial *is* the ultimate goal in the absence of some voluntary accommodation by settlement of Plaintiff's claims.

As an appropriate civil sanction against Merrill Lynch in this case the Court, exercising its discretion under Fed.R.Civ.P. 37(b), will order that Merrill Lynch shall reimburse the Plaintiff for all expenses incurred in connection with Plaintiff's Motion for a Default Judgment and all proceedings that have been necessary to resolve this motion. Plaintiff's counsel shall prepare and file with this Court, within ten (10) days from the date of this Memorandum and Order, a detailed itemization of all expenses incurred with respect to his Motion for Default Judgment. This itemization must include a listing of all billable time and expenses related to counsel's efforts with respect to pursuit of Plaintiff's Motion for Default Judgment. It should

---

**1.** Plaintiff, in his written submissions, has cited a large number of cases where a sanction such as default judgment was imposed based upon circumstances similar, but not identical, to the instant case. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Corchado v. Puerto Rico Marine Mgmt., Inc.*, 665 F.2d 410 (1st Cir.1981); *Puerto Rico v. SS Zoe Colocatroni*, 628 F.2d 652 (1st Cir.1980); *Affanato v. Merrill Brothers*, 547 F.2d 138 (1st Cir.1977); *Eisler v. Stritzler*, 535 F.2d 148 (1st Cir.1976); *Atlantic Cape Fisheries v. Hartford Fire Ins. Co.*, 509 F.2d 577 (1st Cir.1975). The decision to order default as a discovery sanction pursuant to Rule 37(b)(2) is entrusted to the informed discretion of the trial court. *National Hockey League*, 427 U.S. at 642, 96 S.Ct. at 2780; *Local Union No. 251 v. Town Line Sand & Gravel, Inc.*, 511 F.2d 1198, 1199 (1st Cir.1975). Such discretion is to be exercised on a case-by-case basis.

While the Court has no quarrel with either the principle embraced by those authorities or its specific application to the facts in those cases, the Court cannot in good conscience conclude that the principle, as applied to the facts of this case, should yield a similar result, i.e., entry of default and default judgment against Merrill Lynch. The principal reasons cutting against that result are the Law's preference for disposition of claims on their merits, the Court's obligation to provide due process of law in adjudicating claims brought before it, the potential ultimate magnitude of a judgment if one should be entered against Merrill Lynch, and finally, the fact that Merrill Lynch appears to have defenses to the liability features of the Plaintiff's case of sufficient merit to require their formal adjudication.

reflect the dates and times at which each itemized charge or expense was incurred and a concise description of the function served by each itemized expense. It shall also contain a description of the function that counsel served in relation to each itemized charge, together with an indication of the hourly rate at which each item was charged. The billing shall also reflect the total billable hours for which Plaintiff seeks reimbursement as well as the total amount of reimbursement sought. Plaintiff's itemization shall also reflect the normal hourly rate charged by each of Plaintiff's counsel involved in this case.

Counsel for Merrill Lynch shall respond to Plaintiff's submission by memorandum within seven (7) days from the date upon which Plaintiff's submission is filed. Any objections must be detailed with respect to each item objected to. The memorandum will not exceed ten (10) pages in length without prior consent of the Court. The Court will settle the amount of reimbursement.

■■■ Among the sanctions available to the Court in this case, and all cases, is the sanction of contempt. Fed.R.Civ.P. 37(b)(2)(D). The citation of contempt available in Rule 37 is both civil and criminal in nature. *See Hickman v. Taylor*, 153 F.2d 212, 214, n. 1 (3d Cir.1945), *aff'd on other grounds*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The nature of a criminal contempt citation is punitive. *Nye v. United States*, 313 U.S. 33, 42–3, 61 S.Ct. 810, 812–13, 85 L.Ed. 1172 (1940). The purpose of a criminal contempt citation is to "vindicate the authority of the court." *Southern Railway Company v. Lanham*, 403 F.2d 119 (5th Cir.1968).

■■ It is hornbook principle that the Federal Rules of Civil Procedure governing discovery are broadly construed and intend-

ed to contemplate discovery not only of facts that would be admissible at trial but also discovery of facts which, while perhaps themselves inadmissible, will "be the source of other information that would be admissible at trial." *Hickman*, 153 F.2d at 219. Counsel for Merrill Lynch had ample opportunity, both by way of written submissions and oral argument, to contest the Court's Order of October 15, 1982. Once the discovery issue encompassed by the Order was resolved it became incumbent upon Merrill Lynch to enter into and remain in compliance with the Order. It is clear to the Court, as evidenced by representations of Merrill Lynch's counsel to the Court and correspondence between Merrill Lynch and its counsel, that Merrill Lynch did not intend to comply with the spirit, much less obey the letter, of the Court's Order.

As the Court has previously articulated, Merrill Lynch's conduct has caused substantial and unnecessary burdens to be visited upon the Court. The Court, *sua sponte*, adjudges Merrill Lynch in contempt of this Court for its willful and deliberate refusal to obey the Court's Order of October 15, 1982. *See Southern Railway Company*, 403 F.2d at 125.[2]

Accordingly, this Court will order that Merrill Lynch pay into the Registry of this Court, within seven (7) days of this Order, the sum of Ten Thousand Dollars ($10,-000.00) as sanction for its contempt of this Court.

The factors that have guided the Court in determining the appropriate amount of a sanction for Merrill Lynch's contumacious conduct in this case are the following:

(1) that the conduct was deliberately and willfully performed;

(2) that the purpose of the conduct was to achieve an unfair and prohibited advantage in the course of the dis-

---

2. The Court stated in *Southern Railways:*
   Here, the court acted sua sponte to hold appellant in contempt. Despite the recital of the trial court that the contempt was "civil," we view the proceeding below as one between the court, acting to vindicate its authority, on one side, and the appellant-contemnor on the oth-

er. The proceeding could properly be regarded as one for *criminal contempt*, and a criminal sanction was appropriate. Therefore, there was no "variance—between the procedure adopted and the punishment imposed." 403 F.2d at 125.

covery processes of this Court in this case;

(3) that the conduct has caused the devotion of significant amounts of unnecessary time and resources by the parties and their counsel in an effort to obtain appropriate redress for the contumacious conduct of Merrill Lynch;

(4) that the conduct has resulted in an immense and completely unnecessary burden upon the time and other resources of this Court and has significantly impeded this Court's ability to devote the resources so employed to the expeditious adjudication of meritorious claims of other litigants; [3]

(5) that Merrill Lynch has persisted throughout the extensive proceedings in this Court in asserting the propriety of its conduct in the face of clear and convincing evidence to the contrary;

(6) that there exists the need to deter other litigants and counsel from similar improperly obstructive conduct in the course of the litigation process in this Court;

(7) that the Court is entitled to expect responsible compliance by litigants with its duly issued orders;

(8) that the law and processes of justice employed in this Court must be perceived to be fairly and evenly applied to all litigants regardless of their respective status or resources;

(9) that the sanction must have sufficient adverse effect upon the particular Defendant, Merrill Lynch, to constitute a credible punishment and deterrent to that Defendant, a company possessed of significant resources, justly recognized as a major American financial institution;

(10) that the sanction must avoid imposition of undue punishment above and beyond that required by the extent of the actual harm done by the contumacious conduct of Merrill Lynch.

### III. Defendant Merrill Lynch's Motion to Take Judicial Notice

The Court, in its discretion herein, has taken into account all of the pleadings, written submissions, oral arguments, exhibits and discovery filed with this Court. Accordingly, the Court finds that it is not necessary for it to take formal judicial notice either of all discovery to date in this case or of the fact that one of Plaintiff's counsel was running for elective office during a period of time in this litigation.

### IV. Defendant Tucker Anthony's Request for Leave to File a Supplemental Memorandum

On January 12, 1981, Tucker Anthony filed a motion to dismiss and to stay pending arbitration. On September 18, 1981, a hearing was held before Magistrate Zarr on the above motion and a similar motion filed by Defendant Billings. On November 16, 1981, Magistrate Zarr issued his recommended decision with regard to the arbitration. The decision made no mention of the motions to dismiss. On November 27, 1981, Defendant Merrill Lynch filed an objection to the Magistrate's decision as it pertained to the arbitration only. No mention was made therein of the motions to dismiss. No objections were filed either by Tucker Anthony or Billings within the 10-day period required by 28 U.S.C. § 636(b)(1) and Local Rule 8(c) nor thereafter. On June 9, 1982, this Court filed its order overruling Merrill Lynch's objection to Magistrate Zarr's Order. No further action was taken by any party thereto until February 27, 1984. Tucker Anthony failed to file at any time any objections to the Magistrate's Order. It thereby waived its right to contest the Magistrate's failure to

---

**3.** Because this Court does not purport to be possessed of the "Job-like patience" of its colleagues, see Local Union No. 251 v. Town Line Sand & Gravel, Inc., 511 F.2d at 1199 (1st Cir. 1975), the great amount of the Court's time that this matter has consumed is especially frustrating because of its interference with the Court's pressing need to return a badly congested docket to an acceptable level of currency.

rule on issues postured for decision in the proceeding before him. Accordingly, the Court denies Tucker Anthony's request to file a supplemental memorandum.

### V. Defendant Tucker Anthony's Motion to Compel Further Answers to Interrogatories

On January 6, 1983, Defendant Tucker Anthony filed its First Set of Interrogatories to Plaintiff. Plaintiff filed his answers on February 28, 1983. On January 23, 1984, Tucker Anthony filed a motion to compel Plaintiff to supplement his answers of February 28, 1983. On February 2, 1984, Plaintiff filed supplemental answers. On February 27, 1984, Tucker Anthony filed a motion to compel further answers to Tucker Anthony's interrogatories. As basis for its motion, Tucker Anthony argues that Plaintiff's incorporation of the discovery in this case as partial answer to Tucker Anthony's interrogatories is an example of the vague and conclusory nature of Plaintiff's answers overall.

The Court has carefully reviewed Tucker Anthony's interrogatories and Plaintiff's answers thereto. The salient conclusion yielded by the content of Plaintiff's answers and supplemental answers is that all that Plaintiff knows pertinent to answering Tucker Anthony's interrogatories is that which has been learned by Plaintiff's counsel during the course of this most grievously laborious discovery process. Such knowledge is as readily available to the Defendants in this case as to the Plaintiff. Tucker Anthony's request for further supplementary answers is an effort to force the Plaintiff to read all the discovery in this case, arrange it in a meaningful fashion, and assign significance to various facts and dates that have been derived from the discovery of all parties. Such an effort is objectionable as unduly burdensome. There is no reason why Tucker Anthony may not legitimately be expected to do its own work. Plaintiff's answers and supplementary answers make it clear that Plaintiff is going to depend upon information developed during discovery. Tucker Anthony need know nothing more in order to prepare for trial and to effectively meet Plaintiff's case-in-chief.

It is apparent from the long history of discovery in this case that the marshalling of discovery as evidence at trial will be a time-consuming and difficult enterprise. That is as true for Plaintiff as for the Defendants. To the extent that Tucker Anthony's request is an effort to cast the entire burden on Plaintiff's counsel, the request is unduly burdensome and inappropriate. To the extent that Tucker Anthony's request is one more thrust in this substantially "frivolous game" of discovery, enough is enough. Accordingly, Tucker Anthony's motion to compel will be denied.

### ORDER

In accordance with the foregoing Memorandum, it is hereby ORDERED that:

(1) Defendant Mark B. Billings' Motion for Leave to Make a Written Submission on Plaintiff's Motion for Default Judgment is GRANTED.

(2) Defendant Merrill Lynch's Motion to Take Judicial Notice is DENIED;

(3) Defendant Tucker Anthony's Request for Leave to File a Supplemental Memorandum is DENIED;

(4) Defendant Tucker Anthony's Motion to Compel is DENIED;

IT IS FURTHER ORDERED that:

(5) Plaintiff John Xaphes shall prepare and submit the itemized listing described herein within ten (10) days from the date of this Memorandum and Order;

(6) Defendant Merrill Lynch shall file a response to Plaintiff's itemized listing within seven (7) days from the date of its filing;

(7) Merrill Lynch pay into the Registry of this Court, within seven (7) days of this Order, the sum of Ten Thousand Dollars ($10,000.00) as sanction for its contempt of this Court.

So ORDERED.