Rossy COYANTE, Plaintiff—Appellant,

v.

**PUERTO RICO PORTS AUTHORITY,**
**et al., Defendants—Appellees.**

No. 95–2050.

United States Court of Appeals,
First Circuit.

Heard Nov. 8, 1996.
Decided Jan. 23, 1997.

---

Antonio Jiménez–Miranda, San Jaun, PR, for plaintiff–appellant.

Raymond P. Burgos, San Jaun, PR, with whom Pinto–Lugo & Rivera was on brief, for defendant–appellee Puerto Rico Ports Authority.

Roberto Márquez–Sánchez with whom Law Offices of Benjamín Acosta, Jr. was on brief, for defendant–appellee Mangual Maintenance Services, Inc.

Before COFFIN and CAMPBELL, Senior Circuit Judges, and DiCLERICO, Jr.,* District Judge.

---

* Of the District of New Hampshire, sitting by designation.

DiCLERICO, Chief District Judge.

The plaintiff, Rossy Coyante, filed a complaint against the defendants, Puerto Rico Ports Authority ("Ports Authority") and Mangual Maintenance Services, Inc. ("Mangual"), seeking damages she claims to have suffered as a result of slipping and falling on certain premises allegedly owned or controlled by the defendants. Following nine days of testimony at trial, the plaintiff rested and the defendants moved for judgment as a matter of law under Fed.R.Civ.P. 50(a) asserting that the plaintiff had produced no evidence to establish that the defendants owned or controlled the area where the plaintiff slipped and fell. The district court agreed with the defendants and, finding that ownership and control were necessary elements of the plaintiff's case, entered a judgment against her. In this appeal, the plaintiff challenges the district court's ruling on the defendants' motion under Fed.R.Civ.P. 50(a) and several other rulings made during the course of the litigation. For the reasons expressed below, we affirm the district court's judgment.

### Factual and Procedural Background

On July 24, 1990, the plaintiff slipped and fell, suffering personal injury after disembarking from an international flight at the Luis Muñoz Marín International Airport in San Juan, Puerto Rico. On January 3, 1991, she filed suit against the defendants, Ports Authority and Mangual,[1] for negligently failing to make safe a dangerous condition about which they knew or should have known.[2] The plaintiff claimed she suffered damages arising not only from the accident itself, but also from the pain she suffered and medical expenses she incurred when she became addicted to and went through withdrawal from prescription medications she was taking because of the accident.

1. Mangual is a janitorial company with which the Ports Authority has contracted.

2. Coyante brought a separate action asserting similar claims against Línea Aeropostal Venezolana, the airline on which she had traveled. On June 22, 1992, the two cases were consolidated. On January 25, 1994, the plaintiff and the airline

On March 30, 1993, the district court, after resolving an initial challenge to its jurisdiction, granted the plaintiff leave to amend her complaint and ordered the defendants to answer the amended complaint "on or before April 12, 1993." On March 31, 1993, the plaintiff resubmitted her amended complaint (first submitted on February 25, 1992) but the defendants did not answer by April 12 as required by the court's order. However, the plaintiff did not bring this failure to the court's attention until more than two years later.

On December 16, 1993, the district court issued a pretrial conference report requiring the parties to submit a list of uncontested facts. The parties agreed to a "Joint Statement of Uncontested Material Facts to Supplement Pretrial Order" ("joint statement") on December 17, 1993. The plaintiff attaches particular significance to the following provisions of the joint statement:

7. On July 24, 1990, co-defendant Mangual provided janitorial services at the Luis Muñoz Marín International Airport pursuant to a contract with the Puerto Rico Ports Authority.

8. On July 24, 1990, the Puerto Rico Ports Authority owned and operated the Luis Muñoz Marín International Airport.

However, the plaintiff alleges that she did not know of the existence of this document until after she filed her appeal.

On February 9, 1994, the plaintiff attempted to supplement her list of expert witnesses with a loss-of-income expert.[3] On June 9, 1995, the court denied her request to include this expert as a witness without articulating the reasons for its denial.

On December 12, 1994, the court entered a scheduling order requiring discovery to be concluded by April 20, 1995. On February 22, 1995, the plaintiff fired her counsel and, on February 27, 1995, filed a pro se motion

settled their dispute, leaving as defendants only Ports Authority and Mangual.

3. The plaintiff also attempted to add other witnesses who would have bolstered her case on the issue of damages. We focus on the district court's ruling on the loss-of-income expert because the issues involved are identical.

so informing the court. On March 16, 1995, the court held a status conference. At that conference, the court granted a motion filed by the plaintiff's counsel to withdraw from the case and for scheduling purposes asked counsel whether further discovery was pending at that time. Counsel informed the court that no further discovery was pending, and the court let stand its April 20, 1995, discovery deadline.

On March 23, 1995, current counsel appeared on the plaintiff's behalf.[4] The file he received from prior counsel was reportedly in disarray and reflected that the plaintiff had undertaken no discovery of the defendants. On April 19, 1995, one day before the deadline set for discovery to be completed, the plaintiff moved to extend the discovery deadline and take a deposition. This motion was denied by the court on May 24, 1995.

On June 9, 1995, the plaintiff moved to supplement the pretrial order issued on December 17, 1993, to reflect subsequent changes in her case. The same day, the court held a pretrial conference and ruled that it would use without amendment the December 17, 1993, pretrial order, that the plaintiff's loss-of-income expert would not be allowed to testify, and that no further discovery would be allowed.

In July 1995, after four and one-half years, trial appeared imminent. However, three days before trial the plaintiff submitted a motion requesting that default be entered against the defendants for their failure to answer her amended complaint. The district court did not rule on this motion until August 3, 1995, after the conclusion of the trial, at which time it declared the motion moot.

At trial, the plaintiff's case focused almost exclusively on her damages resulting from the fall. Beyond her own testimony, she produced only one occurrence witness, Mirta Silva, to describe the scene of the accident. The two witnesses provided a detailed description both of the scene of the accident and of how the accident occurred.[5] However, neither Silva nor the plaintiff identified specifically where within the airport the accident occurred. There was no testimony about what gate the flight used, which hallway the passengers traveled, or where customs was located. No testimony specifically identified the location of the accident within the larger context of the airport.[6] No testimony connected either defendant to the location where the accident occurred or established what duty, if any, the defendants owed to the plaintiff to make the location safe. In fact, at trial the plaintiff made little mention of defendant Ports Authority and produced no testimony at all mentioning defendant Mangual.

At the close of the plaintiff's nine-day case, the defendants moved for judgment as a matter of law under Fed.R.Civ.P. 50(a), alleging that the plaintiff had not presented any evidence from which it could be found that the defendants were in control of and responsible for maintaining the location where the accident occurred. The district court granted the motion.

On September 1, 1995, the plaintiff filed a notice of appeal from the district court's Rule 50(a) decision. In connection with her appeal, the plaintiff requested a copy of the file from the district court clerk and upon inspection of the file allegedly discovered for the first time the joint statement. The plaintiff had not mentioned the joint statement during the presentation of evidence in her case or when opposing the defendants' Rule 50(a) motion.

---

4. The plaintiff's counsel at trial and on appeal was the seventh lawyer to appear for her in this litigation, not counting her brief pro se appearance. Prior lawyers were fired or left the plaintiff's employ for such reasons as "irreconcilable differences" and "loss of confidence."

5. The accident occurred in a hallway which connected the area where the passengers left the airplane with an adjoining customs area. A pool of water, which apparently formed due to a crack in the ceiling, covered almost the entire width of the hallway in front of the door to customs. The plaintiff fell while attempting to traverse the pool.

6. For example, an employee connected with the airport prepared a report about the accident shortly after it happened that was presented at trial but the report failed to specify the location of the accident.

## Discussion

The plaintiff on appeal has assigned as error a number of decisions by the district court during the course of this litigation.

### A. Rule 50(a) Decision

■ The plaintiff contends that the district court improperly dismissed her case under Fed.R.Civ.P. Rule 50(a). Rule 50(a)(1) states:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

We review the grant of a Rule 50(a) motion *de novo. Katz v. City Metal Co.,* 87 F.3d 26, 28 (1st Cir.1996); *Andrade v. Jamestown Hous. Auth.,* 82 F.3d 1179, 1186 (1st Cir. 1996). In doing so, we use the same standards as the district court, considering all the evidence and inferences reasonably to be drawn from it in the light most favorable to the non-movant. *Katz,* 87 F.3d at 28; *Andrade,* 82 F.3d at 1186. However, "[t]o warrant submission of an issue to the jury, the plaintiff must present 'more than a mere scintilla' of evidence and may not rely on conjecture or speculation." *Katz,* 87 F.3d at 28 (quoting *Richmond Steel, Inc. v. Puerto Rican American Ins. Co.,* 954 F.2d 19, 22 (1st Cir.1992)).

The plaintiff's attack on the trial court's decision to enter judgment against her as a matter of law centers on two factors that she claims bolster the minimal evidence she presented: the joint statement and the knowledge of the jurors. According to the plaintiff, either factor, when combined with the testimony about the location of the accident, was sufficient to allow the jurors to make an inference in her favor as to the ownership and control of the area.

### 1. The Joint Statement

■ The plaintiff argues that the joint statement should have been considered as part of her case, and contends that it was sufficient to establish that Ports Authority owned and Mangual maintained the area of the airport where the accident occurred. However, the plaintiff's argument suffers from a fatal defect, namely, the joint statement was never introduced into evidence.[7] It is a basic tenet of trial procedure that a stipulation concerning uncontested facts must be introduced into evidence by the party who intends to rely on it in order for those facts to be considered by the trier of fact, whether it be jury or judge. Contrary to the plaintiff's assertion, it was her responsibility, and not the court's or the defendants', to ensure that the joint statement was introduced into evidence. As we have explained,

> in our adversary system of justice it is the parties' responsibility to marshal evidence and prove their points. Litigants cannot expect the court to do their homework for them. [Citations omitted].

*Ondine Shipping Corp. v. Cataldo,* 24 F.3d 353, 356–57 (1st Cir.1994). The plaintiff, for whatever reason having failed to introduce the joint statement into evidence, cannot now avoid the consequences of her inaction by claiming the court or the defendants had the responsibility to introduce it.[8]

---

**7.** Even if the plaintiff had introduced the joint statement into evidence, it is by no means a foregone conclusion that it would have sufficiently cured the deficiency in her evidence to withstand the Rule 50(a) motion. We need not confront this issue, however, because the plaintiff never introduced the joint statement into evidence.

**8.** The plaintiff has also offered two other related theories concerning the effect of the joint statement. First, she claims that the agreement that produced the joint statement should have barred the defendants from moving for judgment as a matter of law on the issues of ownership and control. She further asserts that the joint statement functioned as a contract between the parties, one of the implied terms of which was the defendants' promise not to contest ownership and control, and that breach of this agreement requires reversal. As the plaintiff has produced neither legal authority nor well-reasoned arguments for these propositions, we decline to find that either one is viable under the facts of this case.

### 2. The Jury's Experience

■ The plaintiff next contends that she produced enough evidence at trial to allow the jurors to infer, based on their own experience, that defendant Ports Authority owned and controlled the area of the airport where the accident took place.[9] The trial judge, the plaintiff maintains, impermissibly substituted his judgment for that of the trier of fact by removing this decision from the jury.

This case clearly does not present a situation where the jury could rely on its general knowledge and experience to determine something as specific as the location and control of the area where the plaintiff fell. It would be pure speculation to assume what, if any, knowledge the members of the jury possessed concerning these specific issues. Although the plaintiff correctly notes that she is entitled to all reasonable inferences in her favor, tenuous conclusions extrapolated from conjectural knowledge attributed to jurors cannot substitute for evidence tested by the adversary process. As we have said, "[t]o warrant submission of an issue to the jury, the plaintiff must present 'more than a mere scintilla' of evidence and may not rely on conjecture or speculation." *Katz*, 87 F.3d at 28 (quoting *Richmond Steel, Inc. v. Puerto Rican American Ins. Co.*, 954 F.2d 19, 22 (1st Cir.1992)). Speculation about what the jurors might have inferred based on their personal knowledge of airports cannot and does not save the plaintiff's case.

### 3. Other Evidence from which an Inference of Ownership or Control Might Arise

■ We next review *de novo* the record upon which the plaintiff rested her case for any evidence that might raise a reasonable inference that Ports Authority owned and Mangual maintained the area where the accident occurred. A thorough search of the appellate record reveals no evidence more helpful to the plaintiff than that considered, and rejected as inadequate, by the district court.

The trial judge made the following statement after considering the Rule 50(a) motion:

I cannot take judicial notice of a place that I don't even know which is the place. We cannot, by any stretch of the imagination, and even viewing the evidence in the light most favorable to the [plaintiff], reach a reasonable conclusion ... that the place where she fell, which we don't know where it is, we don't know which gate, we don't know which area of the airport, was under the control of the Ports Authority....

Our independent evaluation of the paucity of evidence the plaintiff managed to produce on this point after nine days of trial draws us inexorably to the same conclusion—the evidence produced by the plaintiff was insufficient to withstand judgment for the defendants as a matter of law.

We conclude that the district court properly granted the defendants' Rule 50(a) motion. The plaintiff had ample opportunity at trial to produce evidence from which the location of the accident and the ownership and control of that location could be determined, but she failed to do so.

### B. Pre- and Post–Trial Rulings

The plaintiff next challenges several pre- and post-trial rulings by the district court.

### 1. Discovery

■ The plaintiff asserts that the district court erred in prematurely ordering that discovery be concluded when it failed to extend the discovery deadline. She argues that the district court improperly decided that no further discovery was needed based on a conference in which an attorney previously dismissed by the plaintiff purported to act as her counsel. We review the district court's decision refusing to extend the discovery deadline for abuse of discretion. *Mulero–Rodríguez v. Ponte, Inc.*, 98 F.3d 670, 679 (1st Cir.1996).

The persuasiveness of the plaintiff's argument is undercut by its lack of supporting legal authority. In fact, the relevant extant

---

9. At oral argument, the plaintiff conceded that defendant Mangual's liability could be established only by the joint statement, and not by the jurors' experience and knowledge, because the plaintiff produced no evidence at trial that referred to Mangual.

authority runs contrary to the plaintiff's position. As we have noted, courts have discretion

> under the inherent power "necessarily vested in [them] to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

*Luis C. Forteza e Hijos, Inc. v. Mills,* 534 F.2d 415, 418 (1st Cir.1976) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)).

The minutes of the March 16, 1995, status conference indicate that the trial judge did not abuse his discretion in conducting the conference. At that conference the trial judge properly recognized the plaintiff's former counsel for the limited purpose of granting him permission to withdraw from the case and at the same time made an appropriate inquiry of him as to the status of any pending discovery. Counsel indicated that no discovery was pending. The trial judge's decision not to extend discovery at that time based on counsel's response was an appropriate exercise of his case management authority given the fact that the case had been languishing on the district court docket for more than four years and there had been ample time for discovery to be completed. There was still an opportunity for the plaintiff's successor counsel to attempt in a timely fashion to have the deadline extended. However, he waited for one month after appearing in this case to request an extension, and that request was filed on the day before the existing deadline for discovery. The trial judge had provided ample time for discovery, and the plaintiff's failure to take advantage of that opportunity, whether attributable to her personally or to her attorneys, does not provide an adequate basis for us now to second-guess the trial judge's determination that, after four years, the time to conclude discovery had come.

### 2. *Entry of Default*

The plaintiff also asserts that the district court should have entered a default against the defendants for their failure to answer her amended complaint rather than allowing the motion to become moot. As we have noted, "[a] default judgment is itself a drastic sanction that should be employed only in an extreme situation." *Forteza,* 534 F.2d at 419; *cf. Anderson v. Beatrice Foods Co.,* 900 F.2d 388, 396 (1st Cir.) (discovery abuse, while sanctionable, does not require as a matter of law imposition of most severe sanctions available), *cert. denied,* 498 U.S. 891, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990). The facts of this case do not present an extreme situation justifying the entry of default.

It is certainly not without significance that the plaintiff took no action in response to the defendants' failure to answer until more than two years after the deadline had passed. In addition, the defendants had already answered the plaintiff's initial complaint and the amended complaint did not materially alter the plaintiff's theory of the case. There is nothing in the record to suggest that the district court's failure to enter a default judgment under these circumstances was an abuse of discretion. In another context, we have endorsed the authority of district courts to impose less than the most extreme sanction available. *See Anderson,* 900 F.2d at 396 (discovery abuse). We will not upset the district court's decision, which rested within its sound discretion, not to enter a default judgment against the defendants.

### 3. *Exclusion of Plaintiff's Expert Witness*

The plaintiff next argues that the district court improperly barred her from amending her pretrial submissions to include her loss-of-income expert. She argues that allowing her loss-of-income expert to testify would have created no surprise or prejudice to the defendants because he was known to them and that excluding him deprived the plaintiff of her right to present those facts to the jury.

We need not reach the merits of this argument. Since the plaintiff failed to establish the defendants' liability, the district court's ruling on this matter did not affect the outcome of the case.

### 4. *Costs and Expenses*

Finally, the plaintiff seeks the "costs and expenses" she incurred at trial. Since

the plaintiff did not prevail at trial and has provided neither justification nor legal authority to support her claim that she is entitled to costs and expenses as a non-prevailing party, we find no abuse of discretion in the trial court's decision not to award her any costs or expenses.

### Conclusion

For the reasons stated above, the judgment of the district court is ***affirmed.*** Costs are awarded to the defendants.